Law Office of Joel D. Peterson
Joel D. Peterson (SBN193964)
245 E Redlands Blvd., Suite P
San Bernardino, CA 92408

Attorneys for Plaintiff
Valley Outdoor Media Group, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VALLEY OUTDOOR MEDIA GROUP, INC., a California corporation,

Plaintiff,

v.

BECKER BOARDS, LLC, a California limited liability company; and DOES 1 through 20, inclusive,

Defendants,

NEW TRADITION OUTDOOR, LLC, a New York limited liability company,

Real Party in Interest.

Case No. 5:25-cv-00897-SRM (SPx)

Riverside Superior Court Case No. CVRI2501160

**COMPLAINT FOR:**

**(1) DECLARATORY RELIEF;**

**(2) BREACH OF CONTRACT;**

**(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

**(4) BREACH OF FIDUCIARY DUTY**

**(5) MONEY HAD AND RECEIVED**

**Complaint Filed: February 20, 2025**
**Date of Removal: April 11, 2025**

Plaintiff alleges as follows:

## I. THE PARTIES

1. **Plaintiff:** Valley Outdoor Media Group, Inc. ("VOMG") is a California corporation in good standing.

2. **Defendant:** Becker Boards, LLC ("Becker") is, and at all times relevant herein was, a California limited liability company.

3. **Real Party in Interest:** New Tradition Outdoor, LLC ("New Tradition") is, and at all times relevant herein was, a New York limited liability company. Plaintiff names New Tradition as a real party in interest in the First Cause of Action solely for the purpose of obtaining declaratory relief concerning the validity of Becker's purported transfer of management contracts. Plaintiff does not allege that New Tradition engaged in wrongful conduct.

4. **Doe Defendants:** Plaintiff is currently unaware of the true names and capacities of the Defendants sued herein as Doe 1 through Doe 20, inclusive, and therefore sues these Defendants under fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each Doe Defendant is responsible for, or liable in some manner for, the conduct described herein, and that Plaintiff's damages were proximately caused by such Doe Defendants. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

5. **Agency Allegations:** Plaintiff is informed and believes, and based thereon alleges, that at all relevant times, Becker and Doe 1 through Doe 20, and each of them, were the agents, servants, and/or employees of each other. In connection with the conduct alleged herein, they acted within the course and scope of such agency and employment. Becker and Doe Defendants ratified each act, omission, and transaction performed by the others.

## II. COMMON ALLEGATIONS

### A. Sale of Assets and Health Decline of J. Keith Stephens

6. On or about June 1, 2023, Virtual Media Group, Inc. ("Virtual"), a California corporation, and J. Keith Stephens ("Stephens"), its president and sole shareholder, sold to VOMG all of Virtual's outdoor advertising assets, including a portfolio of billboards and billboard leases located primarily in Los Angeles.

7. Stephens, a seasoned professional in the outdoor advertising industry, had built a valuable portfolio of billboard assets over decades. However, due to severe health problems, Stephens decided to retire and sell Virtual's assets to VOMG.

8. Prior to the sale, Stephens' family convinced him to seek treatment for severe alcoholism at a rehabilitation facility. Stephens checked out after only a few days. His family had him involuntarily hospitalized on several occasions, but he repeatedly assured doctors he did not intend to harm himself and was discharged.

9. On or about May 2, 2025, Stephens was again found unconscious and hospitalized pursuant to Section 5150 California Welfare and Institutions Code Section 5150. He was later diagnosed with multiple brain bleeds and subsequently placed in hospice care, where he passed away on or about August 17, 2024..

10. In the months leading up to his death, Stephens was visibly impaired, frequently intoxicated, and unable to manage Virtual's operations. His incapacity was a significant factor in the decision to sell Virtual's assets to VOMG.

11. Before his impairment, Stephens had entered into a series of management contracts with Becker, under which Becker agreed to manage Virtual's billboards and remit revenue to Stephens, less a management fee. Copies of some of these contracts are attached hereto as Exhibit "A." Due to Stephen's disorganized records accumulated during his illness, Plaintiff continues to search for additional contracts and documents.

**B. Becker's Interference with Virtual's Contracts**

12. Among the billboards Becker managed on Virtual's behalf were two located in Los Angeles, specifically at 1700 Wall Street and 1627 Paloma Street. These billboards were situated on land owned by LA Outdoor, LLC ("LAO"), a California limited liability company, with whom Virtual had entered a contract for their operation.

13. Plaintiff is informed and believes, and based thereon alleges, that when the contract for the Wall Street and Paloma Street billboards expired, Becker intentionally and improperly persuaded LAO not to renew its agreement with Virtual. Instead, Becker encouraged LAO to contract directly with Becker, bypassing Virtual entirely.

14. As a direct and proximate result of Becker's actions, LAO entered into a new agreement with Becker to manage the two billboards. Becker continues to generate revenue from these billboards without compensating Plaintiff, thereby interfering with Virtual's contractual rights and causing significant financial harm.

**C. Becker’s Unauthorized Transfer of Management Contracts to New Tradition**

15. On or about March 25, 2024, Becker convinced Stephens to agree to the transfer of Virtual's management contracts to New Tradition. However, this purported transfer occurred nearly a year after Stephens had already sold Virtual’s assets to Plaintiff.

16. Plaintiff is informed and believes and thereon alleges that Becker would certainly have recognized that Stephens was severely impaired and incapable of contracting and took advantage of the situation.

17. Plaintiff is informed and believes that Becker received substantial compensation from New Tradition for the purported transfer of Virtual's management contracts but failed to pay any portion to Stephens, Virtual, or Plaintiff.

A true and correct copy of the Consent to Assignment of Management Contract is attached hereto as Exhibit "B."

**D. Becker Abandons Los Angeles Operations**

18. After transferring most of the billboard contracts it managed on behalf of Virtual to New Tradition, Becker withdrew its sales personnel from Los Angeles and ceased efforts to generate meaningful revenue in the market.

19. As a result of Becker's abandonment of its contractual management obligations, Plaintiff has little or no revenue from Becker from any billboards still managed by Becker on behalf of Virtual, for months. Plaintiff's inquiries regarding Becker's sales efforts in Los Angeles have gone unanswered, leaving Plaintiff unable to ascertain the extent of Becker's breach or whether it continues to maintain any sales presence in the region.

## III. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Against All Defendants And Real Parties In Interest For Declaratory Relief And Damages)**

20. Plaintiff refers to and incorporates herein by reference as though fully set forth paragraphs 1 through 20 of this Complaint.

21. An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendants and Real Party in Interest concerning the purported sale of Becker's management contracts with Virtual and Stephens.

22. Plaintiff contends that the sale was invalid in that at the time Stephens agreed to the sale, he had already sold all of his interest in the management contracts and all of the Assets of Virtual to Plaintiff.

23. Plaintiff further contends that the sale was invalid, because of Stephen's obvious impairment, something that Becker knew or should have known.

24. Plaintiff is informed and believe and thereon allege that Defendants and Real Party in Interest dispute these contentions.

25. Plaintiff desires a judicial determination of the rights, duties and obligations of the parties concerning the purported sale by Becker of the management contracts.

26. A judicial declaration is necessary and appropriate at this time in order that Plaintiff and Defendants and Real Party in Interest may ascertain their rights, duties and obligations with respect to the management contracts.

**SECOND CAUSE OF ACTION**

**(Against Becker For Breach of Contract)**

27. Plaintiff refers to and incorporates herein by reference as though fully set forth paragraphs 1 through 26 of this Complaint.

28. Prior to the sale of Virtual's assets to Plaintiff, Becker entered into one or more valid and enforceable contracts with Virtual to manage its outdoor advertising billboards and remit revenue to Virtual, less a management fee (the "Management Contracts").

29. As the successor in interest to Virtual's assets, Plaintiff acquired all rights under the Management Contracts, including the right to receive revenue generated from the billboards Becker managed on behalf of Virtual.

30. Becker materially breached the Management Contracts by:

a. Failing to remit revenue generated from the billboards to Plaintiff;

b. Transferring management responsibilities under the contracts to

c. New Tradition without Plaintiff's consent or authorization;

d. Ceasing efforts to market and generate revenue for the billboards under its management in order to avoid the expense of a sales force; and

d. Abandoning its contractual obligations in the Los Angeles market.

31. As a direct and proximate result of Becker's breaches, Plaintiff has suffered damages, including lost revenue and harm to its business operations, in an amount to be proven at trial.

32. Plaintiff has performed all conditions, covenants, and promises required of it under the Management Contracts, except those excused by Becker's breach.

33. Plaintiff seeks damages from Becker in an amount to be proven at trial, plus interest, attorneys' fees, and costs as permitted by law.

**THIRD CAUSE OF ACTION**

**(Against Becker and Doe 1 Through Doe 20, Inclusive,**

**for Intentional Interference with Prospective Economic Advantage)**

34. Plaintiff refers to and incorporates herein by reference as though fully set forth paragraphs 1 through 33 of this Complaint.

35. Plaintiff maintained a valid and ongoing economic relationship with LAO, the owner of properties located at 1700 Wall Street and 1627 Paloma Street in Los Angeles, where Plaintiff (and its predecessor Virtual) operated advertising displays pursuant to a written agreement with LAO (the "LAO Agreement"). This relationship gave rise to a reasonable probability of future economic benefit to Plaintiff, including the continued operation of the billboards and renewal or extension of the LAO Agreement.

36. Defendant Becker was acting as Plaintiff's authorized agent under a management agreement during the period in which it acquired material non-public information regarding the terms and expiration of the LAO Agreement, including rental pricing, expiration dates, and Plaintiff's anticipated strategy for lease renewal.

37. Plaintiff is informed and believes, and on that basis alleges, that Becker intentionally exploited its agency role and confidential knowledge to pursue its own direct agreement with LAO, thereby diverting the business opportunity for

its own benefit and intentionally undermining Plaintiff's economic relationship with LAO.

38. Specifically, Plaintiff alleges that Becker engaged in wrongful acts including, but not limited to:

a. Using confidential, non-public information obtained in the course of its agency to approach LAO and offer a competing lease;

b. Encouraging and inducing LAO not to renew or extend its contractual relationship with Plaintiff; and

c. Misrepresenting the nature and status of Plaintiff's rights to the billboards in order to position itself as a more favorable successor.

39. Becker's conduct was independently wrongful within the meaning of *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995), in that it constituted a breach of fiduciary duty, misuse of confidential information, and breach of the duty of loyalty. These acts are independently actionable under California law and are not justified or privileged.

40. As a direct and proximate result of Becker's wrongful conduct, Plaintiff's prospective economic relationship with LAO was disrupted, and Plaintiff was deprived of significant financial benefits it would have received from continuing billboard operations on the LAO properties.

41. Plaintiff has suffered substantial economic damages in an amount to be proven at trial, including lost revenue, diminished business expectancy, and reputational harm.

42. Becker acted willfully, intentionally, and with conscious disregard of Plaintiff's rights. Its conduct was malicious, oppressive, and fraudulent, warranting an award of punitive damages under applicable law.

**FOURTH CAUSE OF ACTION**

(Against Becker and Doe 1 Through Doe 20, Inclusive,

for Breach of Fiduciary Duty

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. At all relevant times, Defendant Becker acted as Plaintiff's agent pursuant to Management Agreements that conferred authority on Becker to manage certain billboard assets owned or controlled by Plaintiff, including lease negotiation, payment processing, and client communications. In doing so, Becker assumed a position of trust and confidence with respect to Plaintiff and its business affairs.

45. As Plaintiff's agent, Becker owed Plaintiff fiduciary duties, including the duties of loyalty, full disclosure, confidentiality, and the obligation to avoid self-dealing or conflicts of interest in any transaction related to the subject matter of the agency.

46. Plaintiff is informed and believes, and on that basis alleges, that Becker breached its fiduciary duties by:

a. Misusing confidential information obtained in the course of its agency relationship with Plaintiff to pursue its own competing interests;

b. Secretly negotiating with LAO to enter into a lease agreement for billboard sites managed by Plaintiff;

c. Undermining Plaintiff's ongoing business relationship with LAO for Becker's personal financial benefit; and

d. Failing to disclose material information to Plaintiff regarding Becker's adverse dealings with LAO while still acting as Plaintiff's agent.

47. Becker's conduct was intentional, willful, and undertaken in bad faith, and it constitutes a clear breach of the fiduciary duties owed to Plaintiff under California law.

48. As a direct and proximate result of Becker's breach, Plaintiff has sustained damages in an amount to be proven at trial, including lost lease revenues and diminished goodwill with lessors and clients.

49. Becker's breach was malicious, fraudulent, and oppressive, and Plaintiff is therefore entitled to an award of punitive damages pursuant to California Civil Code section 3294.

**FIFTH CAUSE OF ACTION**

**(Against Becker and Doe 1 Through Doe 20, Inclusive,**

**for Money Had And Received)**

50. Plaintiff refers to and incorporates herein by reference as though fully set forth paragraphs 1 through 49 of this Complaint.

51. Within the past two years, Defendant, Becker, received money that rightfully belongs to Plaintiff, including but not limited to the following:

a. revenue generated from the management of billboards at 1700 Wall Street and 1627 Paloma Street; and

b. all revenue or other compensation received by Becker from New Tradition for the unauthorized transfer of Plaintiff's management contracts.

52. Becker received and retained this money for its own benefit, despite having no legal or equitable right to retain it, as it was derived from billboard assets and contracts that belong to Plaintiff.

53. At all relevant times, it was inequitable and unjust for Becker to retain this money, as it was obtained through actions that breached its contractual obligations to Plaintiff or interfered with Plaintiff's rights.

54. As a direct and proximate result of Becker's retention of money owed to Plaintiff, Plaintiff has suffered financial harm in an amount to be proven at trial.

55. Plaintiff demands judgment against Becker in the amount of money had and received, according to proof, together with interest, costs of suit, and such other relief as the Court deems just and proper.

**IV. PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants and Real Party in Interest as follows:

**As to the First Cause of Action**

**(Declaratory Relief and Damages)**

1. For a judicial declaration that:

   a. The purported sale of Becker's management contracts with Virtual and Stephens were invalid, as Stephens had already sold all rights to those contracts and assets to Plaintiff; and

   b. The purported sale is further invalid due to Stephens' impairment, which Becker knew or should have known at the time of the transaction.

2. For damages in an amount to be proven at trial.

**As to the Second Cause of Action**

**(Breach of Contract)**

1. For compensatory damages in an amount to be proven at trial, including lost revenue and harm to Plaintiff's business operations.
2. For interest at the legal rate.
3. For attorneys' fees and costs of suit as permitted by law or contract.

**As to the Third Cause of Action**

**(Intentional Interference with Prospective Economic Advantage)**

1. For compensatory damages in an amount to be proven at trial, including lost revenue and harm to Plaintiff's contractual rights.

2. For punitive damages in an amount sufficient to punish Becker and deter similar wrongful conduct.

**As to the Fourth Cause of Action**

**(Breach of Fiduciary Duty)**

1. For compensatory damages in an amount to be proven at trial, including lost revenue, harm to Plaintiff's reputation, and diminished future opportunities.

2. For punitive damages in an amount sufficient to punish Becker and deter similar wrongful conduct.

**As to the Fifth Cause of Action**

**(Money Had and Received)**

1. For restitution in the amount of all money unjustly retained by Becker, including:

a. Revenue generated from the management of billboards at 1700 Wall Street and 1627 Paloma Street; and

b. Compensation or other financial benefits received by Becker from New Tradition for the unauthorized transfer of Plaintiff's management contracts.

2. For interest at the legal rate.

**General Prayer for Relief**

1. For costs of suit incurred herein.

2. For such other and further relief as the Court deems just, equitable, and appropriate under the circumstances.

Dated: May 12, 2025

Law Office of Joel D. Peterson

By [signature]
Joel D. Peterson
Attorneys for Plaintiff
Valley Outdoor Media Group, Inc.

**EXHIBIT "A"**

# SIXTH AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT

This Sixth Amendment to Second Billboard Management Agreement (this "Sixth Amendment") is entered into as of ____________________, 2024, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("Owner"), and BECKER BOARDS, L.L.C., a California limited liability company ("Becker").

## RECITALS

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "Original Agreement"), as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, and as further amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020 (the "Fifth Amendment") (collectively, the "Management Agreement") with respect to certain billboards and wallsigns located in the Los Angeles, California metropolitan area.

B. Owner and Becker desire to amend the Management Agreement and remove two of the listed signs from the terms and provisions of the Management Agreement.

NOW, THEREFORE, in consideration of the Recitals, the Management Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Owner and Becker agree as follows:

## AGREEMENT

1. Recitals. The recitals set forth above are incorporated into the body of this Sixth Amendment.

2. Exhibit A. The following wallsigns (collectively, the "Wallsigns") are deleted from Exhibit "A" and are no longer subject to the terms and conditions of the Management Agreement: (i) the wallsign identified as 1106 North Vine Street (West and South facing walls only) on Exhibit "A" to the Original Management Agreement, and (ii) the wall sign located on the east side of the building located at 11075 Santa Monica Boulevard (added in the Fifth Amendment). Attached to this Sixth Amendment is a revised Exhibit "A", reflecting the removal of the Wallsigns from the Management Agreement.

3. Notice. Owner's notice address in Section 7 of the Management Agreement is deleted and replaced with the following:

VIRTUAL MEDIA GROUP, INC.
1714 N. McCadden Pl, #3408
Los Angeles, California 90028
(323) 428-6500

4. Counterparts. This Sixth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Sixth Amendment, signatures transmitted by electronic PDF will be binding to the same extent as original signatures.

5. Miscellaneous. Except as specifically modified in this Sixth Amendment, the Management Agreement will continue in full force and effect in accordance with its terms. In the event that any of the terms or conditions of the Management Agreement conflict with this Sixth Amendment, the terms and conditions of this Sixth Amendment will control.

6. No Default. As of the date of this Sixth Amendment, the parties mutually represent and warrant no breach or default exists under the Management Agreement and no state of facts which, with notice, the passage of time, or both, would result in a breach or default of the Management Agreement.

7. Binding. The covenants, agreements, terms and conditions contained in this Sixth Amendment bind and inure to the benefit of the parties of this Sixth Amendment and their respective successors and assigns.

8. Modifications. This Sixth Amendment may not be changed orally but only by an agreement in writing signed by the party against which enforcement of any waiver, change, modification or discharge is sought.

IN WITNESS WHEREOF, Owner and Becker have duly executed this Sixth Amendment as of the day and year first above written.

**“OWNER”**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:_________________________________
Name: J. Keith Stephens
Its: President

**“BECKER”**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:_____________________________
Name: Mark Becker
Its: Manager

Exhibit "A"

1. 5300 Santa Monica Boulevard, Los Angeles, CA;
2. 610 El Segundo Boulevard, Los Angeles, CA;
3. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
4. 9911 W. Pico Boulevard, Los Angeles, CA;
5. 1800 Argyle Avenue, Los Angeles; CA;
6. 1860 Vine Street, Los Angeles, CA (East face wall only);
7. 6017 W. Sunset Boulevard, Los Angeles, CA;
8. 10350 Santa Monica, Los Angeles, CA (East Wall);
9. 25060 Ventura Boulevard, Los Angeles, CA (design review sign off to be done by VMG);
10. 1700 Wall, Los Angeles, CA;
11. 5425 Santa Monica Boulevard, Los Angeles, CA (East Wall); and
12. 6301 Santa Monica Boulevard, Los Angeles, CA.

**NEW BILLBOARD MANAGEMENT AGREEMENT**
**(1106 North Vine – West and South)**

This New Billboard Management Agreement is made as of this 25th day of March, 2024, by and between Virtual Media Group Inc., a California corporation ("Owner"), and Becker Boards, L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner is the owner of the west and south facing wallsigns located at 1106 North Vine Street, Los Angeles, California (the "Wallsigns");

WHEREAS, Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, as amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020, and as further amended by that certain Sixth Amendment to Billboard Management Agreement dated March 25, 2024 (the "Sixth Amendment") (collectively, the "Management Agreement") with respect to the Wallsigns and certain other billboards and wallsigns located in the Los Angeles, California metropolitan area. A copy of the Management Agreement is attached to this Agreement as Exhibit "A";

WHEREAS, the Sixth Amendment removed the Wallsigns from the Management Agreement; and

WHEREAS, Owner desires to hire Becker to sell ad space on the Wallsigns under the same terms and conditions of the Management Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

**AGREEMENTS**

1. **INCORPORATION**. The terms and conditions of the Management Agreement are incorporated and integrated into this New Billboard Management Agreement, and as incorporated and integrated is hereafter collectively referred to as the "Agreement".

2. **APPLICATION**. This Agreement applies and limits the rights and obligations granted under the Management Agreement to only those rights and obligations related to the Wallsigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

"**OWNER**"

Virtual Media Group, Inc.,
a California corporation

By:__________________________________
Name: J. Keith Stephens
Its: President

"**BECKER**"

Becker Boards, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:________________________________
Name: Mark Becker
Its: Manager

EXHIBIT A

MANAGEMENT AGREEMENT

[See attached]

## SECOND BILLBOARD MANAGEMENT AGREEMENT

This Second Billboard Management Agreement ("Second Agreement") is made as of this 13th day of September, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS , L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker are parties to that Billboard Management Agreement dated July 1, 2018 as amended by that certain First Amendment To Billboard Management Agreement dated August 29, 2018 (collectively, the "First Amended Agreement") relating solely to the signs at the four specific addresses described in Exhibit "A" thereto;

WHEREAS, nothing in this Second Agreement is intended in anyway whatsoever to modify, affect or impact in any respect the obligations described in the First Amended Agreement except as explicitly provided below;

WHEREAS, an affiliate of Becker has a pre-existing lease for the north face of the building located at 1106 North Vine Street, Los Angeles, California (the "Vine Building") and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, Total Outdoor currently leases the east face of the Vine Building and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, VMG was one of the successful plaintiffs in that certain 2003 Permanent Injunction action against the City of Los Angeles referred to as case number CV 00-9913 (the "Injunction"), affirmed as to both parties by the federal court in 2006, in connection with those certain Wallsigns (collectively, the "Injunction Wallsigns") identified in the Injunction;

WHEREAS, the Injunction was only obtained after years of contentious litigation, including a successful interlocutory appeal to the Ninth Circuit, and the expenditure of hundreds of thousands of dollars in attorneys' fees, and VMG has invested a very substantial amount of time and resources in the Injunction Walls;

WHEREAS, nothing in this Second Agreement is intended in any way to transfer to Becker any interest in the Injunction, and VMG will at all times remain the owner of the rights described in the Injunction and any permits, licensees or entitlements obtained through use of the Injunction;

WHEREAS, VMG desires to engage Becker to market the out of home advertising signs identified in Exhibit "A;" including some of the Injunction Wallsigns (hereafter the "Second Agreement Signs") and handle the billing and collections for the same and Becker desires to accept such engagement on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **PRIMARY ROLE OF BECKER**. Becker shall use commercially reasonable efforts to lease the Second Agreement Signs on terms and conditions reasonably acceptable to both Becker and VMG (each such fully executed lease is referred to individually herein as a "Lease" and collectively as the "Leases"; each such landlord as a "Landlord" and collectively as the "Landlords"; and the location of each such building is referred to individually herein as a "Location" and collectively as the "Locations"). Additionally, Becker shall be the sole and exclusive agent for ad sales on the Second Agreement Signs and shall use commercially reasonable efforts to sell advertising on them.

2. **TIME FOR PERFORMANCE.**

180 Days

**2.1** ~~**1 Year Deadline**~~. As to each individual Location, Becker shall have six months from the execution and delivery of this Second Agreement (the "Performance Deadline") to negotiate with each of the applicable Landlords and enter into a Lease with such Landlords (the "Performance Condition"). As to any Location which Becker fails to satisfy the Performance Condition by the Performance Deadline or the Lease is lawfully terminated by either the Landlord or Becker, any rights granted to Becker by this Second Agreement may be terminated by VMG with respect to each such Location. It is anticipated that Becker may not be successful in satisfying the Performance Condition for all of the Locations by the Performance Deadline. In such event, except as otherwise stated in the last sentence of this Section 2.1, this Second Agreement will remain in full force and effect only as to those Locations which Becker has satisfied the Performance Condition by the Performance Deadline. VMG may, but is not required to, extend the Performance Deadline in writing if it deems in its sole discretion that Becker has made substantial progress as to any specific Location. Notwithstanding anything to the contrary, the Performance Deadline shall be deemed extended and waived with respect to any Lease which VMG approves in writing after the Performance Deadline.

**2.2** **Injunction**. Subject to the following sentence, it is the intention of VMG to use the sign square footage for any of the Second Agreement Signs as well as other Injunction Wallsigns which are not ultimately leased for the purpose of negotiating a relocation agreement with the City of Los Angeles under the local municipal code and Business and Professions code section 5412. Notwithstanding anything to the contrary herein, VMG will not attempt to relocate the square footage on any Second Agreement Signs during the term (including any renewal periods and right of first refusal periods) of Becker's Leases on the same.

Initial ______ Initial ______

3. **TERM OF AGREEMENT**. With respect to each of the Second Agreement Signs which Becker successfully leases by the Performance Deadline or for which the Performance Deadline has been extended or deemed waived, the term of this Second Agreement shall end upon the expiration date of Lease corresponding to the Location entered into by Becker and any renewals and right of first refusal periods set forth in the Leases thereof. Accordingly, the term of this Second Agreement may be different for each of the Second Agreement Signs. For clarity, it is the intention of VMG and Becker that the term of this Second Agreement as to each individual Location shall correspond to the length of the Lease Becker is able to negotiate for the specific, corresponding Location, including all renewals and rights of first refusal periods set forth in the applicable Leases.

4. **BECKER AD SALES FUNCTIONS**. Becker shall plan and administer all activities related to the ad sales on the Second Agreement Signs. These activities shall include, but are not limited to, making the rental payment under the Leases during the term of this Agreement, directing ad sales to end users, cooperating with ad agencies, media buyers, organizations and other individuals and companies so as to coordinate the marketing activities for the Second Agreement Signs. Upon request from VMG from time to time (no more often than weekly), Becker shall update VMG on the status of any recent holds.

**4.1 Marketing Materials**. Becker shall be responsible for the preparation of a photo sheet for each of the faces of the Second Agreement Signs and inclusion of the Second Agreement Signs faces on the web site where other Becker related signs are displayed. Additionally, Becker may install a Becker Boards "apron" logo or name at the bottom of each Second Agreement Sign (and Becker may remove or cover up any existing "apron" logos and/or contact information on the Second Agreement Signs in an effort to help avoid confusion on who to contact for advertising on the same and such other identification information as Becker may deem appropriate from time to time. From time to time, Becker may also install an "available" ad on any of the faces of the Second Agreement Signs. All costs associated herewith shall be borne solely by Becker.

**4.2 Information Distribution**. Becker shall use commercially reasonable efforts to market ad sales for the Second Agreement Signs. In connection with its responsibilities under this Agreement, Becker shall include the applicable Second Agreement Signs faces on responses to the applicable RFPs, show the Second Agreement Signs faces on the web site used by Becker to market its signs, follow up with inquiries related to ad sales on the Second Agreement Signs, and cooperate with outside agencies, organizations and individuals that may be interested in purchasing ads on the Second Agreement Signs either for themselves or others. Becker Shall Provide At Least Bi Monthly Hold's Sale contract updates

5. **PAYMENTS**.

Upon the mutual execution and delivery of this Second Agreement and the First Amended Agreement, Becker shall advance the sum of $50,000 to VMG for its services (the "Advance"). In connection with each ad sale occurring during the Term of this Agreement and any renewals or extensions thereof and subject to the following sentence, after fully reimbursing Becker for the cumulative sum of: (i) VMG's forty-five percent (45%) share of all prior "Deductions" that have not been previously been deducted from VMG's share, and (ii) 100% of the Advance, each month Becker shall pay VMG an amount equal to forty-five percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Second Agreement Signs during the immediately preceding calendar month from the Second Agreement Signs. "Adjusted Gross Income" is defined as follows: all advertising revenues (including printing and posting charges) received by Becker during the immediately preceding calendar month from the Second Agreement Signs, less 45% of the following "Deductions": (a) rent and other charges paid by Becker to the Landlords under the Leases, (b) electricity bills paid by Becker for the Second Agreement Signs, (c) any customer printing, posting and removal charges paid by Becker on the Second Agreement Signs, (d) all City of Los Angeles and/or state fees, charges, and payments paid by Becker for the Second Agreement Signs, (e) any sales tax on the ad income paid by Becker or other similar charges relating to the Second Agreement Signs, any third party costs paid by Becker for lights, bulb replacements,

window modifications and/or replacements, and other improvements associated with the Wallsigns, (f) credit card fees incurred by Becker in connection with accepting payments from advertisers on the Wallsigns, and (g) property and liability insurance premiums and deductibles paid by Becker for insurance required under the Leases.

5.1 Becker shall invoice and collect on its ad sales on the Second Agreement Signs using its normal practices and deposit such sums in Becker's bank account or that of one of its affiliates. Within twenty (20) days after the month immediately following the clearing of any check(s) for payment relating to ad sales on the Second Agreement Signs, Becker shall send a check to VMG for VMG's share of the ad sales revenue that may then be due to VMG as set forth herein.

5.2 Notwithstanding anything to the contrary herein, Becker shall be entitled to recoup 100% of the Advance out of what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under this Agreement. To the extent that there is not enough Adjusted Gross Income to cover any amounts owed to Becker in any month, the shortfall shall be carried over to the next month, next year, etc. until such full amounts paid by Becker have been recouped by Becker as set forth herein.

6. PERMITS, LICENSES AND ENTITLEMENTS. As indicated above, VMG has spent substantial time and effort obtaining the right to operate the Second Agreement Signs, including those described in the Injunction. Nothing in this Second Agreement in any way conveys to Becker any interest whatsoever in the Injunction. Becker specifically acknowledges that VMG will at all times remain the owner of the rights described in the Injunction and will likewise be the owner of any all rights and government entitlements, including but not limited to local and state permits obtained to operate the Second Agreement Signs, however, VMG agrees to allow Becker to use the same during the term of this Second Agreement.

7. **INDEMNIFICATIONS AND INSURANCE.**

7.1 Becker hereby agrees to indemnify, defend (with council of VMG's choosing) and hold VMG harmless from any claim or cause of action, made by any party which is based upon the wrongful conduct or misrepresentation of any kind by Becker or its agents. VMG hereby agrees to indemnify, defend (with council of Becker's choosing) and hold Becker harmless from any claim or cause of action made by any party which is based upon the wrongful conduct or misrepresentation of any kind by VMG and/or any violations, fines, or damages, arising out of the operation of the Second Agreement Signs due to a violation or claim that some or all of the Second Agreement Signs are being used for outdoor advertising purposes in violation of the law. Notwithstanding anything to the contrary herein, with respect to each Lease where: (i) a right to cancel a Lease occurs per the terms and conditions of the Lease, (ii) the Wallsign is obstructed, or (iii) a notice of violation is issued in connection with the use of the applicable Wallsign for outdoor advertising purposes, Becker may notify Owner that it is cancelling such Lease(s) from this Agreement and thereafter, Becker shall not be responsible for making Lease payments on such Lease(s).

7.2 Notwithstanding the foregoing, Becker acknowledges that the Second Agreement Signs are protected by the Injunction but have no permits. It is specifically agreed that VMG will use its best efforts to employ the Injunction in order to get any sign permits or other entitlement that may be necessary for the operation of the Second Agreement Signs, if any.

8. **NOTICES**. All payments, notices, requests, demands, approvals, or other communications provided for or arising under this Agreement shall be in writing and shall be: a) delivered in person to an agent or officer of the party to whom directed; or b) delivered via certified mail, facsimile, or overnight courier (such as FedEx) to the other party or parties at the address or addresses set forth below, or at such other addresses as may be submitted by either party in writing to the other party.

To VMG:

VIRTUAL MEDIA GROUP INC.
1714 N McCadden Pl, #3320
Los Angeles, CA 90028
1-323-428-6500

To Becker: 4234 E Indian School Dr.
Phoenix, AZ 85018
Fax: 602-368-4358
Attention: Mark Becker or Joseph White

9. **BOOKS AND RECORDS**. Upon reasonable request, no more often than once per calendar year, VMG shall have the right during Becker's normal business hours to inspect and audit the books and records of Becker relating to the revenues generated from the Second Agreement Signs for the immediately preceding twelve (12) month period, and Becker shall make all such matters available to VMG within five (5) business days of such request. If Becker's revenues are understated for such period, Becker will issue a check for the difference within five (5) business days of discovery of any such understatement. If there has been an overpayment for such period, VMG shall issue a check to Becker for the difference within five (5) days from the discovery of any such overpayment. Notwithstanding anything to the contrary herein, with each monthly report summarizing what it owed to VMG, such report shall detail any Deductions.

10. **MISCELLANEOUS**

10.1 In the event either party hereto institutes legal action to enforce the provisions of this Agreement, the losing party agrees to pay the prevailing party reasonable attorneys' fees incurred in said action.

10.2 Neither party to this Agreement may assign any of its rights, liabilities or obligations under this Agreement without the written consent of the other which may be withheld in the non-requesting party's sole and absolute discretion .

10.3 The provisions of this Agreement constitute the entire Agreement of the parties, and may only be changed by written amendment signed by duly authorized officers of the parties.

10.4 No party shall be deemed in breach of this Agreement unless and until notified by the other of the claimed breach or default and the breaching or defaulting party's failure to cure the same within ten (10) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**VMG:**

By: ______________________
Virtual Media Group Inc.
J. Keith Stephens, President

**BECKER:**

By: ______________________
Joseph White, Member

Exhibit "A"

1. 5300 Santa Monica Blvd, Los Angeles, CA;
2. 1106 North Vine Street (West and South facing walls only; North and East facing walls are specifically excluded from this Agreement), Los Angeles, CA;
3. 610 El Segundo Blvd, Los Angeles, CA;
4. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
5. 9911 W. Pico Bd., Los Angeles, CA;
6. 1800 Argyle Avenue, Los Angeles, CA;
7. 1860 Vine St., Los Angeles, CA, East face wall only;
8. 6017 W. Sunset Blvd., Los Angeles, CA;
9. 10350 Santa Monica, Los Angeles, CA (design review sign off to be done by VMG);
10. 25060 Ventura Blvd, Los Angeles, CA (design review sign off to be done by VMG); and
11. 5425 Santa Monica Blvd., Los Angeles, CA.

**FIRST AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT and THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT**

This First Amendment To Second Billboard Management Agreement ("First Amendment to 2nd Agreement") and Third Amendment to Billboard Management Agreement ("Third Amendment to 1st Agreement") is made as of this 30th day of January, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management agreement dated July 1, 2018, as amended by that certain First Amendment and Second Amendment thereto dated August 29, 2018 and September 18, 2018 respectively (collectively, the "1st Agreement")

WHEREAS, Owner and BB Small previously entered into that certain Second Billboard Management Agreement dated September 13tht, 2018 (the "2nd Agreement"); and

WHEREAS, the parties desire to amend the 1st Agreement and the 2nd Agreement (collectively, the "Agreements") as set forth herein.

WHEREAS, this First Amendment to 2nd Agreement and Third Amendment to 1st Agreement are collectively referred to herein as the "January 30th, 2019 Amendment".

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the Agreements as follows:

**AGREEMENTS**

1. **CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new No. 12 is here by added to Exhibit "A" of the 2nd Agreement for a new location and it shall read as follows: "12. 1700 Wall, Los Angeles, CA".

2. **$13,000 ADVANCE.** BB Small has advanced the sum of $13,000 (the "Advance") to Owner against the first sums that BB Small would otherwise owner to Owner under either or both of the Agreements. The Advance shall be repaid out of Owner's share of monies that BB Small would otherwise owe to Owner until such Advance has been fully repaid to BB Small.

3. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the Agreements, between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the Agreements remain as stated therein and shall not be repeated in their entirely in this January 30th, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this January 30th, 2019 Amendment as of the day and year first above written.

**OWNER:** **BB SMALL:**

By: ____________________
Virtual Media Group Inc.
J. Keith Stephens, President

By: ____________________
Becker Boards Small, L.L.C.
Joseph White, authorized Member

**SECOND AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Second Amendment to Second Billboard Management Agreement ("Second Amendment to 2nd Agreement") is made as of this 7th day of May, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker"). JKS

**RECITALS**

WHEREAS, Owner and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019; and

WHEREAS, the parties desire to further amend the 2nd Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to further amend the 2nd Agreement as follows:

**1. CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new site is hereby added to Exhibit "A" of the 2nd Agreement as follows: "13. 5425 Santa Monica Blvd. Los Angeles, CA 90029 (East Wall) (hereafter "New Site").

**2. ADVANCE PAYMENT:** Upon execution of this agreement, BB Small and Becker will deliver to Owner a check in the sum of $15,000 (the "Advance Payment").

**3. DELIVERY OF LEASE.** Within three business day, no later than May ~~8~~ 10TH, 2019, Owner shall deliver to BB Small and Becker a fully executed lease for the New Site in the form attached hereto as Exhibit "A." JKS

**4. RECOUPMENT OF ADVANCE PAYMENT** Becker shall be entitled to recoup the Advance Payment as follows:

a. If Owner delivers the lease described in paragraph 3, then BB Small and Becker Boards shall be entitled to recover $5,000 (and any other sums owed to Becker under the Second Agreement) from what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under the Second Agreement. The remaining $10,000 balance will not be recoverable.

b. If Owner fails to deliver the lease described in paragraph 3, then Becker shall be entitled to recover the entire Advance Payment (and any other sums owed to Becker under the Second Agreement) from the Second Agreement Signs.

**5. REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the 19STCP004822nd Agreement is hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the

Agreements remain as stated therein and shall not be repeated in their entirely in this May 7, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties have executed this May 7, 2019 Amendment as of the date and year first written above.

VMG:

By____________________

J. Keith Stephens, President

BECKER BOARDS CALIFORNIA:

By____________________

Joseph White, authorized Member

# THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT

This Third Amendment to Second Billboard Management Agreement ("Third Amendment to 2nd Agreement") is made as of this 13th day of June, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019;

WHEREAS, the parties previously executed the Second Amendment to Second Billboard Management Agreement dated May 3, 2019;

WHEREAS, Becker currently maintains off-site adverting signs on the West and South Walls of the building located at 1106 N. Vine St. Los Angeles, CA 90038 (hereafter the "Property") which are the subject of the above described agreements between VMG and Becker (collectively referred to herein as the "Management Agreements");

WHEREAS, Becker also operates an off-site advertising sign on the North Wall (hereafter the "North Wall") of the Property which is not subject the subject of the Management Agreements; and

WHEREAS, Becker has received an Order to Comply from the City of Los Angeles for the North Wall questioning its legal status.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. **ADVANCE PAYMENT:** Upon execution of this agreement, BB Small and Becker will deliver to VMG a check in the sum of $20,000 (the "Advance Payment").

2. **RESOLUTION OF ORDER TO COMPLY:** Upon receipt of the Advance Payment, VMG will use its best efforts to resolve the Order to Comply issued against the off-site advertising sign on the North Wall of the Property, including, but not limited to, extending to the North Wall the protection of the 2003 Permanent Injunction issued against the City of Los Angeles by the Federal District Court in case number CV 00-9913.

3. **RECOUPMENT OF ADVANCE PAYMENT:** In addition to recoupment of all other sums to be reimbursed to Becker prior to making any payments to VMG, Becker shall be entitled to recoup the Advance Payment from the first $20,000 dollars received from advertising revenue generated from the walls that are the subject of the Second Agreement

4. **VMG OBTAINS NO INTEREST IN NORTH WALL:** Nothing in this OTC Agreement creates any rights in VMG to the North Wall or the revenue generated by it.

5. **REAFFIRMATION OF TERMS:** Except as expressly modified herein, all of the terms, covenants and provisions of the Management Agreements are hereby confirmed and ratified and shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this June 13, 2019 Amendment as of the date and year first written above.

VMG:

By____________________

J. Keith Stephens, President

BECKER BOARDS CALIFORNIA:

By____________________

Joseph White, authorized Member

**FOURTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fourth Amendment to Second Billboard Management Agreement (this "**Fourth Amendment**") is entered into as of September 23, 2019, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**"), and BECKER BOARDS, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019 (the "**First Amendment**"), as further amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, and as further amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019 (as amended, the "**Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Agreement.

B. The First Amendment was inadvertently signed by Becker Boards Small, L.L.C., an Arizona limited liability company.

C. Owner and Becker desire to confirm that the Agreement, as amended, are the obligations of Becker.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Third Amendment as if fully restated herein.

2. Parties. Owner and Becker hereby confirm that they are the parties to the Agreement. Although Becker did not sign the First Amendment, Becker hereby affirms and ratifies the First Amendment as if Becker had been a signer to such First Amendment. Owner and Becker hereby confirm that BB Small has never been a party to the Agreement and BB Small has no liabilities and obligations under the Agreement.

3. New Billboard. Owner and Becker are entering into that certain Outdoor Advertising Purchase Agreement ("**Purchase Agreement**"), whereby Becker will acquire, in accordance with the terms of the Purchase Agreement, Owner's interest in that certain Outdoor Advertising Lease Agreement, dated November 16, 2018, with Rabadi Service Station, Inc., as landlord, as supplemented by that certain Addendum, dated September 4, 2019 (collectively, the "**6301 Lease**"), for an outdoor advertising display on property located at 6301 Santa Monica

Boulevard, Los Angeles, CA (the "**6301 Site**"). Upon the assignment of the 6301 Lease from Owner to Becker (the "**Assignment Date**"), the 6301 Site shall be deemed one of the Locations and the 6301 Lease shall be deemed one of the Leases. The Adjusted Gross Income received by Becker for the 6301 Site shall be handled and distributed in accordance with the provisions of Section 5 of the Agreement. Becker and Owner confirm that the Adjusted Gross Income, after Deductions, shall be split 45% to Owner and 55% to Becker (the "**6301 Distributions**"). In accordance with the terms of the Purchase Agreement, Becker has paid to Owner the sum of Sixty Thousand and No/100 Dollars ($60,000.00) as an earnest money deposit (the "**6301 Deposit**"). In the event the Purchase Agreement is terminated, and Becker does not become the tenant under the 6301 Lease, then the 6301 Deposit shall be repaid by Owner to Becker. Becker shall first apply the 6301 Deposit to any amounts owed to Owner by Becker as part of the 6301 Distributions until the 6301 Deposit has been fully repaid to Becker.

4. Exhibit. Effective as of the Assignment Date, a new No. 13 is hereby added to Exhibit A to the Agreement and it shall read as follows:

"13. 6301 Santa Monica Boulevard, Los Angeles, CA"

5. Counterparts. This Fourth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fourth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

6. Miscellaneous. In the event that any of the terms or conditions of the Agreement conflict with this Fourth Amendment, the terms and conditions of this Fourth Amendment shall control.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fourth Amendment as of the day and year first above written.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By: ______________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By: ______________________________
Name: Mark Becker
Its: Manager

**FIFTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fifth Amendment to Second Billboard Management Agreement (this "**Fifth Amendment**") is entered into as of March 4, 2020, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**" or "**VMG**"), and Becker Boards, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, and as further amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019 (as amended, the "**Second Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Second Agreement.

B. Owner and Becker desire to provide that (i) one (1) wall sign located on the east side of the building located at 10350 Santa Monica Boulevard, (ii) one (1) wall sign located on the east side of the building located at 11075 Santa Monica Boulevard, and (iii) one (1) wall sign located on the west side of the building located at 11075 Santa Monica Boulevard (collectively, the "**Additional Wallsigns**"), shall become subject to the terms of the Second Agreement as set forth herein.

C. Owner and Becker desire to also amend certain provisions of the Second Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Second Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Fifth Amendment as if fully restated herein.

2. Performance Deadline. Section 2.1 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

"2.1 Intentionally Deleted."

3. Term. Second 3 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

JKS
MMS

"3. TERM OF AGREEMENT. The initial term of this Second Agreement shall be five (5) years (the "Term") from the date of this Second Agreement, except with regard to provisions of this Second Agreement that survive the expiration of the Term. Upon the expiration of the initial five (5) year Term, the Second Agreement shall be automatically renewed for an additional term of five (5) years unless at least ninety (90) days prior the expiration of the initial Term either party notifies the other that it desires to terminate this Second Agreement (effective upon the expiration of the initial Term). Notwithstanding anything to the contrary herein, if Becker assists Owner in extending the term of any of the Leases or Additional License Agreements, the then current term shall end on the later of: (i) the then current term of this Second Agreement, or (ii) the latest expiration date of any Leases or Additional License Agreements that Becker assists Owner in extending. If Owner desires to sell some or all of the Wallsigns or Additional Wallsigns during the term of this Second Agreement or within two (2) years after the end of the term provided Becker is not in default or breach of this Second Agreement beyond any applicable notice and cure periods, Becker shall have a right of first refusal to purchase the same. If Becker desires to exercise its right, Becker must exercise it within thirty (30) days after Owner provides Becker with a copy of the third party purchase agreement and all other related transaction documents for such Wallsigns or Additional Wallsigns."

4. Wallsigns. The Additional Wallsigns are hereby added to Exhibit A to the Second Agreement.

5. Second Advance Payment. Concurrent with the execution of this Fifth Amendment, Becker shall pay to Owner the sum of Fifty Thousand and No/100 Dollars ($50,000.00) (the "**Second Advance Payment**"). Becker shall be entitled to recoup the Second Advance Payment from the Adjusted Gross Income earned on the Additional Wallsigns in twelve equal monthly installments of Four Thousand Sixty-Six and 67/100 Dollars ($4,166.67). Becker shall pay Owner an amount equal to forty percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Additional Wallsigns on the immediately preceding calendar month from the Additional Wallsigns.

6. No Assignment of Additional License Agreements. Owner shall remain the licensee under (a) that certain Outdoor Advertising License Agreement, dated April 28, 2016, with LHS Equities LLC, as licensor, for the outdoor advertising display located at 10350 Santa Monica Boulevard, Los Angeles, CA, and (b) that certain Outdoor Advertising Billboard License Agreement, dated September 27, 2016, with Westwood Capital Ventures, LLC, as licensor, for the outdoor advertising displays located at 11075 Santa Monica Boulevard, Los Angeles, CA (collectively, the "**Additional License Agreements**"). Owner shall be responsible for all financial obligations under the Additional License Agreements, including, but not limited to, any license fees or revenue sharing required thereunder. Owner hereby represents and warrants to Becker that the Additional License Agreements are valid and subsisting and in full force and effect in accordance with its terms and constitutes the legal, valid, binding, and enforceable obligation of the Owner and licensor thereunder; neither Owner nor the licensor is in default; and no licensor has given any notice to Owner of intention of instituting litigation with respect to its Additional License Agreement or terminating the license thereunder.



AKS

MMB

7. Right of First Refusal.

A. As set forth in the Second Agreement, Owner was one of the named plaintiffs in Federal District Court Case Number CV 00-9913, in which the court issued the Injunction against the City of Los Angeles protecting the operation of a series of wall signs. The City's Municipal Code allows for the "relocation" of signs to new sites where both the sign owner and City come to a mutual agreement. However, nothing in this Fifth Amendment in any way obligates Owner to enter into any relocation agreement with the City nor restricts the terms of any such agreement which shall remain solely under the control of Owner. Furthermore, nothing in this Fifth Amendment requires Owner to sell any new, relocated sign.

B. If Owner decides, it its sole and unfettered discretion, to sell any new, relocated sign(s), it will give Becker notice. Becker will then have ten (10) business days from receipt of such notice (sent by overnight delivery such as Fed Ex) to negotiate with Owner a purchase price reflecting fair market value to be mutually agree by the parties. If the parties cannot agree on a fair market value or if Becker does not respond by the close of business on the tenth (10th) business day after receiving notice, it will constitute a rejection, and the right of first refusal shall expire (the "Expiration Date"). If Owner does not sell such billboard to an unrelated third party within sixty (60) after the Expiration Date, Becker's right of first refusal shall automatically be renewed with respect to such sign.

C. This right of first refusal shall be in effect be in effect for the entirety of the term of the Second Agreement.

8. Counterparts. This Fifth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fifth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

9. Miscellaneous. In the event that any of the terms or conditions of the Second Agreement conflict with this Fifth Amendment, the terms and conditions of this Fifth Amendment shall control.

*[Signature Page Follows]*



JKS AMB

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fifth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:_______________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:_______________________
Name: Mark Becker
Its: Manager

**SIXTH AMENDMENT TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Sixth Amendment to Second Billboard Management Agreement (this "Sixth Amendment") is entered into as of March 25, 2024, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("Owner"), and BECKER BOARDS, L.L.C., a California limited liability company ("Becker").

**RECITALS**

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "Original Agreement"), as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, and as further amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020 (the "Fifth Amendment") (collectively, the "Management Agreement") with respect to certain billboards and wallsigns located in the Los Angeles, California metropolitan area.

B. Owner and Becker desire to amend the Management Agreement and remove two of the listed signs from the terms and provisions of the Management Agreement.

NOW, THEREFORE, in consideration of the Recitals, the Management Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Owner and Becker agree as follows:

**AGREEMENT**

1. Recitals. The recitals set forth above are incorporated into the body of this Sixth Amendment.

2. Exhibit A. The following wallsigns (collectively, the "Wallsigns") are deleted from Exhibit "A" and are no longer subject to the terms and conditions of the Management Agreement: (i) the wallsign identified as 1106 North Vine Street (West and South facing walls only) on Exhibit "A" to the Original Management Agreement, and (ii) the east and west facing wallsigns located on the east side of the building located at 11075 Santa Monica Boulevard (added in the Fifth Amendment). Attached to this Sixth Amendment is a revised Exhibit "A", reflecting the removal of the Wallsigns from the Management Agreement.

3. Notice. Owner's notice address in Section 7 of the Management Agreement is deleted and replaced with the following:

VIRTUAL MEDIA GROUP, INC.
1714 N. McCadden Pl, #3408
Los Angeles, California 90028
(323) 428-6500

4. Counterparts. This Sixth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Sixth Amendment, signatures transmitted by electronic PDF will be binding to the same extent as original signatures.

5. Miscellaneous. Except as specifically modified in this Sixth Amendment, the Management Agreement will continue in full force and effect in accordance with its terms. In the event that any of the terms or conditions of the Management Agreement conflict with this Sixth Amendment, the terms and conditions of this Sixth Amendment will control.

6. No Default. As of the date of this Sixth Amendment, the parties mutually represent and warrant no breach or default exists under the Management Agreement and no state of facts which, with notice, the passage of time, or both, would result in a breach or default of the Management Agreement.

7. Binding. The covenants, agreements, terms and conditions contained in this Sixth Amendment bind and inure to the benefit of the parties of this Sixth Amendment and their respective successors and assigns.

8. Modifications. This Sixth Amendment may not be changed orally but only by an agreement in writing signed by the party against which enforcement of any waiver, change, modification or discharge is sought.

IN WITNESS WHEREOF, Owner and Becker have duly executed this Sixth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:______________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:______________________________
Name: Mark Becker
Its: Manager

Exhibit "A"

1. 5300 Santa Monica Boulevard, Los Angeles, CA;
2. 610 El Segundo Boulevard, Los Angeles, CA;
3. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
4. 9911 W. Pico Boulevard, Los Angeles, CA;
5. 1800 Argyle Avenue, Los Angeles; CA;
6. 1860 Vine Street, Los Angeles, CA (East face wall only);
7. 6017 W. Sunset Boulevard, Los Angeles, CA;
8. 10350 Santa Monica, Los Angeles, CA (East Wall);
9. 25060 Ventura Boulevard, Los Angeles, CA (design review sign off to be done by VMG);
10. 1700 Wall, Los Angeles, CA;
11. 5425 Santa Monica Boulevard, Los Angeles, CA (East Wall); and
12. 6301 Santa Monica Boulevard, Los Angeles, CA.

# NEW BILLBOARD MANAGEMENT AGREEMENT
# (5425 Santa Monica – West)

This New Billboard Management Agreement is made as of this 25th day of March, 2024, by and between Virtual Media Group Inc., a California corporation ("Owner"), and Becker Boards, L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, Owner is the owner of the west facing wallsign located at 5425 Santa Monica Boulevard, Los Angeles, California (the "Wallsign");

WHEREAS, Owner and Becker, as successor in interest to Becker Boards Small, L.L.C., an Arizona limited liability company, entered into that certain Billboard Management Agreement dated July 1, 2018, as amended by that certain First Amendment to Billboard Management Agreement dated August 29, 2018, as further amended by that certain Second Amendment to Billboard Management Agreement dated September 18, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Fourth Amendment to Billboard Management Agreement dated September 23, 2019, and as further amended by that certain Fifth Amendment to Billboard Management Agreement dated March 25, 2024 (the "Fifth Amendment") (collectively, the "Management Agreement") with respect to the Wallsign and certain other billboards and wallsigns located in the Los Angeles, California metropolitan area. A copy of the Management Agreement is attached to this Agreement as Exhibit "A";

WHEREAS, the Fifth Amendment removed the Wallsign from the Management Agreement; and

WHEREAS, Owner desires to hire Becker to sell ad space on the Wallsign under the same terms and conditions of the Management Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **INCORPORATION**. The terms and conditions of the Management Agreement are incorporated and integrated into this New Billboard Management Agreement, and as incorporated and integrated is hereafter collectively referred to as the "Agreement".

2. **APPLICATION**. This Agreement applies and limits the rights and obligations granted under the Management Agreement to only those rights and obligations related to the Wallsign.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

"**OWNER**"

Virtual Media Group, Inc.,
a California corporation

By:________________________________
Name: J. Keith Stephens
Its: President

"**BECKER**"

Becker Boards, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:________________________________
Name: Mark Becker
Its: Manager

EXHIBIT A
MANAGEMENT AGREEMENT

[See attached]

## *BILLBOARD MANAGEMENT AGREEMENT*

This Billboard Management Agreement ("Agreement") is made as of this 1st day of July, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("Owner") and BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("Becker").

### *RECITALS*

WHEREAS, Owner is the owner of those certain Wallsigns (collectively, the "Wallsigns") identified on Exhibit "A" attached hereto and leases (the "Leases") associated therewith which provide, amongst other things, access to and from the Wallsigns;

WHEREAS, except as noted on Exhibit "A", the Leases are in full force and effect, all payments under the Leases are current, and Owner is not in default or breach under the Leases;

WHEREAS, Owner desires to hire Becker to sell ad space on the Wallsigns;

WHEREAS, Owner desires to engage Becker to market the Wallsigns and handle the billing and collections for the same and Becker desires to accept such engagement on the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

### *AGREEMENTS*

1. ***APPOINTMENT AS AGENT***. Owner hereby authorizes Becker to act as its sole and exclusive agent for ad sales on the Wallsigns, and hereby grants to Becker the exclusive right to sell advertising on the Wallsigns using commercially reasonable efforts.

2. ***TERM OF AGREEMENT***. Except with regard to provisions of this Agreement that survive the expiration of the Term, the initial Term of this Agreement shall be five (5) years. Upon the expiration of this initial five (5) year Term, the Agreement shall be automatically renewed for an additional term of five (5) years unless at least ninety (90) days prior the expiration of the initial Term, either party notifies the other that it desires to terminate this Agreement (effective upon the expiration of the initial Term). Notwithstanding anything to the contrary herein, if Becker assists Owner in extending the term of any of the Leases, the then current term shall end on f the latter of: (i) the then current term of this Agreement, or (ii) the latest expiration date of any Leases that Becker assists Owner in extending. If Owner desires to sell some or all of the Wallsigns during the term of this Agreement or within two (2) years after the end of the term, provided Becker is not in default or breach of this Agreement beyond any applicable notice and cure periods, Becker shall have a right of first refusal to purchase the same. If Becker desires to exercise its right, Becker must exercise it within thirty (30) days after Owner provides Becker with a copy of the third party purchase agreement and all other related transaction documents for such Wallsigns.

3. ***BECKER AD SALES FUNCTIONS***. Becker shall plan and administer all activities related to the ad sales on the Wallsigns. These activities shall include, but are not limited to, making the rental payment under the Leases during the term of this Agreement, direct ad sales to end users, cooperating with ad agencies, media buyers, organizations and other individuals and companies so as to coordinate the marketing activities for the Wallsigns. On Exhibit "B",

Owner has listed all current (and future) ad contracts on any of the Wallsigns; the purpose of which is to ensure that no space is double sold. In any event, Becker shall be compensated as set forth herein for all ads that run during the Term of this Agreement even if Owner sells such ad space or there is already an ad contract in place for such ad(s). Within three (3) business days after the mutual execution and delivery of this Agreement, Owner shall notify the ad buyers or agencies therefore (if applicable) that all payments on the Existing Ad Contracts are to be paid to Becker.

3.1 Marketing Materials. Becker shall be responsible for the preparation of a photo sheet for each of the faces of the Wallsigns and inclusion of the Wallsigns faces on the web site where other Becker related Wallsigns are displayed. Additionally, Becker may install a Becker Boards "apron" logo or name at the bottom of each Wallsign faces (and Becker may remove or cover up any existing "apron" logos and/or contact information on the Wallsigns in an effort to help avoid confusion on who to contact for advertising on the Wallsigns) and such other identification information as Becker may deem appropriate from time to time. From time to time, Becker may also install an "available" ad on any of the faces of the Wallsigns. All costs associated herewith shall be borne solely by Becker. Within ten (10) days after the end of the Term, Becker shall remove its apron logos and other Becker contact information and thereafter, Owner (or its assignee) shall be solely responsible, at its sole cost and expense, for installing any replacement logos, etc.

3.2 Information Distribution. Becker shall use commercially reasonable efforts to market ad sales for the Wallsigns. In connection with its responsibilities under this Agreement, Becker shall include the applicable Wallsigns faces on responses to the applicable RFPs, show the Wallsigns faces on the web site used by Becker to market its Wallsigns, follow up with inquiries related to ad sales on the Wallsigns, and cooperate with outside agencies, organizations and individuals that may be interested in purchasing ads on the Wallsigns either for themselves or others.

4. ***PAYMENTS***.

**4.1** In connection with each ad sale occurring during the Term of this Agreement and any renewals or extensions thereof and subject to the following sentence, after reimbursing Becker for the cumulative sum of all prior "Deductions" that have not been previously been deducted from Owner's share and after the applicable "Back Rent" and amounts advanced by Becker pursuant to Section 4.3 below have been fully reimbursed to Becker as set forth in Section 4.4 below, Becker shall pay Owner an amount equal to forty percent (40%) (the other 60% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Wallsigns during the immediately preceding calendar month from the Wallsigns (including ones that may be added in the future). "Adjusted Gross Income" is defined as follows: all advertising revenues (including printing and posting charges) received by Becker during the immediately preceding calendar month from the Wallsigns, less the following "Deductions": (i) 40% of the rent paid by Becker to the Wallsign landlords under the Leases, (ii) 40% of electricity bills paid by Becker for the Wallsigns, (iii) 40% of any customer printing, posting and removal charges paid by Becker on the Wallsigns, (iv) 40% of all City of Los Angeles and/or state fees, charges, and payments owed or paid by Becker for the Wallsigns, (v) 40% of any sales tax on the ad income paid by Becker or other similar charges relating to the Wallsigns, and (vi) third party costs incurred by Becker to cure any defaults or breaches by Owner, if any. Becker shall invoice and

collect on its ad sales on the Wallsigns using its normal practices and deposit such sums in Becker's bank account. Notwithstanding the preceding, in no instance shall Becker engage a collection agency, attorney or collection company without Owner's prior written consent and in such instances, the cost of such collection services shall be borne solely by Owner. Within twenty (20) days after the month immediately following the clearing of any check(s) for payment relating to ad sales on the Wallsigns, Becker shall send a check to Owner for the Owner's share of the ad sales revenue that may then be due to Owner as set forth herein.

***4.2*** Additionally, as set forth on Exhibit "A", Becker shall advance to the applicable landlords on behalf of Owner the sum of the back rent owed to such landlords (the "Back Rent"), provided that such landlords execute an acknowledgement reasonably acceptable to Becker confirming (i) that their Lease is in full force and effect and there are no breaches or defaults which remain uncured or which entitle the landlord to terminate their applicable Lease, and (ii) with respect to any Leases that are not in the name of Owner, that the Lease has been assigned to Owner and that the landlord recognized the Owner as the lessee under the Lease.

***4.3*** Becker shall also pay the outstanding bill currently owed by Owner to Argos Media Solutions, LLC ("Argos"), in the amount of $32,000 for legal/consulting services previously incurred in protecting the legal status of the Wallsigns and Owner's interest therein.

***4.4*** Notwithstanding anything to the contrary herein, Becker shall be entitled to recoup 100% of the payments described above in paragraphs 4.2 and 4.3 out of the Owner's share of the Adjusted Gross Income generated by the Wallsigns at the rate of $6,660.19 per month beginning September 1, 2018. To the extent that there is not enough of Owner's share of the Adjusted Gross Income to cover the amount owed to Becker in any month, the shortfall shall be carried over to the next month, etc. until the full amounts advanced by Becker under paragraphs 4.2 and 4.3 have been fully recouped by Becker out of the Owner's share of the Adjusted Gross Revenues.

6. ***INDEMNIFICATIONSAND INSURANCE***.

6.1 Becker hereby agrees to indemnify, defend (with council of Owner's choosing) and hold Owner harmless rom any claim or cause of action, made by any party which is based upon the wrongful conduct or misrepresentation of any kind by Becker or its agents. Owner hereby agrees to indemnify, defend (with council of Becker's choosing) and hold Becker harmless from any claim or cause of action made by any party which is based upon the wrongful conduct or misrepresentation of any kind by Owner and/or any violations, fines, or damages, arising out of the operation of the Wallsigns due to a violation or claim that some or all of the Wallsigns are being used for outdoor advertising purposes in violation of the law. Notwithstanding anything to the contrary herein, with respect to each Lease where: (i) a right to cancel a Lease occurs per the terms and conditions of the Lease, (ii) the Wallsign is obstructed, or (iii) a notice of violation is issued in connection with the use of the applicable Wallsign for outdoor advertising purposes, Becker may notify Owner that it is cancelling such Lease(s) from this

Agreement and thereafter, Becker shall not be responsible for making Lease payments on such Lease(s).

6.2 Since Becker has no insurable interest in the Wallsigns, Becker shall be not liable for any damage or destruction to the same except in the event of Becker's gross negligence or willful misconduct. Additionally, to the extent that Owner carries insurance on the Wallsigns, Owner shall name Becker and Becker's agents as additional insured's on any such policy(ies).

7. ***NOTICES***. All payments, notices, requests, demands, approvals, or other communications provided for or arising under this Agreement shall be in writing and shall be: a) delivered in person to an agent or officer of the party to whom directed; or b) delivered via certified mail, facsimile, or overnight courier (such as FedEx) to the other party or parties at the address or addresses set forth below, or at such other addresses as may be submitted by either party in writing to the other party.

To Owner:

VIRTUAL MEDIA GROUP INC.
1714 N McCadden Pl, #3320
Los Angeles, CA 90028
1-323-428-6500

To Becker: 4234 E Indian School Dr.
Phoenix, AZ 85018
Fax: 602-368-4358
Attention: Mark Becker or Joseph White

8. ***BOOKS AND RECORDS***. Upon reasonable request, Owner shall have the right during Becker's normal business hours to inspect and audit the books and records of Becker relating to the revenues generated from the Wallsigns for the immediately preceding twelve (12) month period, and Becker shall make all such matters available to Owner within five (5) business days of such request. If Becker's revenues are understated for such period, Becker will issue a check for the difference within five (5) business days of discovery of any such understatement. If there has been an overpayment for such period, Owner shall issue a check to Becker for the difference within five (5) days from the discovery of any such overpayment.

9. ***MISCELLANEOUS***

9.1 In the event either party hereto institutes legal action to enforce the provisions of this Agreement, the losing party agrees to pay the prevailing party reasonable attorneys' fees incurred in said action.

9.2 This Agreement shall bind the successor and assigns of the parties and shall run with the ownership of the Wallsigns.

9.3 The provisions of this Agreement constitute the entire Agreement of the parties, and may only be changed by written amendment signed by duly authorized officers of the parties.

9.4 No party shall be deemed in breach of this Agreement unless and until notified by the other of the claimed breach or default and the breaching or defaulting party's failure to cure the same within ten (10) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

***OWNER:***

By: [signature] 7/1/2018
Virtual Media Group Inc.
J. Keith Stephens, President

***BECKER:***

By: [signature] 7/1/2018
Joseph White, Member

Exhibit "A"

Back Rent:

1. 520 E 15th St. Los Angeles, CA – East, West & South Facing Wallsigns $7,200.
2. 1351 Elwood St. Los Angeles, CA – West Facing Wallsign $7,500.
3. 5300 Santa Monica Blvd – Southwest Facing Wallsign potential to add 2nd face. $29,722.33
4. 5425 Santa Monica Blvd – West Facing Wallsign $3,500.

Exhibit "A"

Back Rent:

| | | |
|---|---|---|
| 1. | 520 E 15th St. Los Angeles, CA – East, West & South Facing Wallsigns | $7,200 |
| 2. | 1351 Elwood St. Los Angeles, CA – West Facing Wallsign | $7,500 |
| 3. | 5300 Santa Monica Blvd – Southwest Facing Wallsign potential to add 2nd face. | $29,722.33 |
| 4. 5. | 5425 Santa Monica Blvd – West Facing Wallsign | $3,500 |

5.

5. 5425 Santa Monica Blvd – West Facing Wallsign $3,500

AKS

JM

Exhibit "B"

1. 5300 South Santa Monica from July 16, 2018 through August 19, 2018; and
2. 5300 South Santa Monica from September 17, 2018 through October 12, 2018.

## FIRST AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT

This First Amendment Billboard Management Agreement ("First Amendment") is made as of this 29th day of August, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

### RECITALS

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management Agreement dated July 1st, 2018 (the "BB Small Agreement"); and

WHEREAS, the parties desire to amend the BB Small Agreement as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the BB Small Agreement as follows:

### AGREEMENTS

1. **ACKLOWLEDGMENT & ASSIGNMENT**. The parties hereby agree that BB Small has fulfilled all its obligation under the BB Small Agreement to pay the "Back Rent", all current rent owing under the "Leases" and the $32,000 payment to "Argos" all as defined in the BB Small Agreement. All "Deductions" otherwise owing to BB Small per the BB Small Agreement shall hereafter be treated and accounted for as being owed to Becker. All the rights and obligations of BB Small under the BB Small Agreement have hereby been assigned to Becker and the parties hereto consent to the same and hereby release BB Small from any and all liability in connection with the BB Small Lease and this First Amendment.

2. **CHANGES TO PARAGRAPH 4.1.**

   The definition of "Deductions" is hereby amended to include the following:

   > "(vii) 40% of any third party costs paid by Becker for lights, bulb replacements, and other improvements associated with the Wallsigns, (viii) 40% of any credit card fees incurred by Becker in connection with accepting payments from advertisers on the Wallsigns, and (ix) 40% of any property and liability insurance premiums and deductibles paid by Becker for insurance required under the Leases."

3. **CHANGES TO EXHIBIT "A".** In No. 3 of Exhibit "A", the language of "potential to add 2nd face" is hereby changed to "potential to add 2nd and 3rd face". The following language is also added to Exhibit "A": "BB Small has a pre-existing lease for the north face of the building at 1106 North Vine Street, Los Angeles, California and the east face of such building is currently leased to Total Outdoor. Nothing in this Agreement is intended to govern or convey any rights to VMG in connection therewith."

4. **SUCCESSORS AND ASSIGNS.** Paragraph 9.2 is deleted and replaced by the following:

"Neither party may assign any of its rights, liabilities or obligations under this Agreement without the written consent of the other which may be withheld in the non-requesting party's sole and absolute discretion. This Agreemnt shall continue to apply between the parties after any changes in ownership of the Wallsgins occurs."

5. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the BB Small Agreement, now between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the BB Small Agreement remain as stated therein and shall not be repeated in their entirely in this First Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth. The BB Small Agreement (as amended by this First Amendment thereto) and the First Amendment shall be interpreted as the "Agreement".

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**OWNER:**

By:____________________
Virtual Media Group Inc.
J. Keith Stephens, President

**BECKER & BB SMALL:**

By:____________________
Joseph White, Member

## SECOND AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT

This Second Amendment To Billboard Management Agreement ("Second Amendment") is made as of this 18th day of September, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

### RECITALS

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management Agreement dated July 1st, 2018 which was amended by that certain First Amendment To Billboard Management Agreement dated August 29, 2018 (collectively, the "BB Small Agreement"); and

WHEREAS, the parties desire to amend the BB Small Agreement as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the BB Small Agreement as follows:

### AGREEMENTS

1. **CHANGES TO EXHIBIT "A".** In No. 3 of Exhibit "A", the reference to the "Southwest" Facing Wallsign is hereby changed to "West" Facining Wallsign; all the other faces of that location at 5300 Santa Monica Blvd. are to be goverened by that certain Second Billboard Management Agreement amongst the parties.

2. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the BB Small Agreement, now between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the BB Small Agreement remain as stated therein and shall not be repeated in their entirely in this Second Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth. The BB Small Agreement (as amended by this Second Amendment thereto) and the Second Amendment shall be interpreted as the "Agreement".

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**OWNER:**

By: [signature]
Virtual Media Group Inc.
J. Keith Stephens, President 10/30/18

**BB SMALL:**

By: [signature]
Joseph White, Member

**FIRST AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT and THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT**

This First Amendment To Second Billboard Management Agreement ("First Amendment to 2nd Agreement") and Third Amendment to Billboard Management Agreement ("Third Amendment to 1st Agreement") is made as of this 30th day of January, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management agreement dated July 1, 2018, as amended by that certain First Amendment and Second Amendment thereto dated August 29, 2018 and September 18, 2018 respectively (collectively, the "1st Agreement")

WHEREAS, Owner and BB Small previously entered into that certain Second Billboard Management Agreement dated September 13tht, 2018 (the "2nd Agreement"); and

WHEREAS, the parties desire to amend the 1st Agreement and the 2nd Agreement (collectively, the "Agreements") as set forth herein.

WHEREAS, this First Amendment to 2nd Agreement and Third Amendment to 1st Agreement are collectively referred to herein as the "January 30th, 2019 Amendment".

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the Agreements as follows:

**AGREEMENTS**

1. **CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new No. 12 is here by added to Exhibit "A" of the 2nd Agreement for a new location and it shall read as follows: "12. 1700 Wall, Los Angeles, CA".

2. **$13,000 ADVANCE.** BB Small has advanced the sum of $13,000 (the "Advance") to Owner against the first sums that BB Small would otherwise owner to Owner under either or both of the Agreements. The Advance shall be repaid out of Owner's share of monies that BB Small would otherwise owe to Owner until such Advance has been fully repaid to BB Small.

3. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the Agreements, between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the Agreements remain as stated therein and shall not be repeated in their entirely in this January 30th, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this January 30th, 2019 Amendment as of the day and year first above written.

**OWNER:** **BB SMALL:**

By: ______________________
Virtual Media Group Inc.
J. Keith Stephens, President

By: ______________________
Becker Boards Small, L.L.C.
Joseph White, authorized Member

**FOURTH AMENDMENT**
**TO**
**BILLBOARD MANAGEMENT AGREEMENT**

This Fourth Amendment to Billboard Management Agreement (this "**Fourth Amendment**") is entered into as of September 23, 2019, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**"), and Becker Boards, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker Boards Small, L.L.C., an Arizona limited liability company ("**BB Small**"), entered into that certain Billboard Management Agreement dated July 1, 2018, as amended by that certain First Amendment to Billboard Management Agreement dated August 29, 2018 (the "**First Amendment**"), as further amended by that certain Second Amendment to Billboard Management Agreement dated September 18, 2018 (the "**Second Amendment**"), and as further amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019 (the "**Third Amendment**") (as amended, the "**Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area.

B. Pursuant to the First Amendment, all interest in the Agreement was assigned by BB Small to Becker. The Second Amendment and the Third Amendment were inadvertently signed by BB Small.

C. Owner and Becker desire to confirm that the Agreement, as amended, are the obligations of Becker.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Fourth Amendment as if fully restated herein.

2. Parties. Owner and Becker hereby confirm that they are the parties to the Agreement. Owner and Becker hereby release BB Small from any and all liabilities and obligations under the Agreement pursuant to the First Amendment. Although Becker did not sign the Second Amendment and the Third Amendment, Becker hereby affirms and ratifies the Second Amendment and Third Amendment as if Becker had been a signer to such amendments.

3. Counterparts. This Fourth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fourth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

4. Miscellaneous. In the event that any of the terms or conditions of the Agreement conflict with this Fourth Amendment, the terms and conditions of this Fourth Amendment shall control.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fourth Amendment as of the day and year first above written.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By: ______________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By: ______________________________
Name: Mark Becker
Its: Manager

# FIFTH AMENDMENT
# TO
# BILLBOARD MANAGEMENT AGREEMENT

This Fifth Amendment to Billboard Management Agreement (this "Fifth Amendment") is entered into as of March 25, 2024, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("Owner"), and BECKER BOARDS, L.L.C., a California limited liability company ("Becker").

## RECITALS

A. Owner and Becker Boards Small, L.L.C., an Arizona limited liability company ("BB Small"), entered into that certain Billboard Management Agreement dated July 1, 2018, as amended by that certain First Amendment to Billboard Management Agreement dated August 29, 2018, as further amended by that certain Second Amendment to Billboard Management Agreement dated September 18, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, and as further amended by that certain Fourth Amendment to Billboard Management Agreement dated September 23, 2029 (the "Fourth Amendment") (collectively, the "Management Agreement") with respect to certain billboards and wallsigns located in the Los Angeles, California metropolitan area.

B. Pursuant to the Fourth Amendment, Owner and Becker confirmed that the obligations of BB Small under the Management Agreement are the same obligations of Becker.

C. Owner and Becker desire to also amend the Management Agreement and remove one of the listed signs from the terms and provisions of the Management Agreement.

NOW, THEREFORE, in consideration of the Recitals, the Management Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Owner and Becker agree as follows:

## AGREEMENT

1. Recitals. The recitals set forth above are incorporated into the body of this Fifth Amendment.

2. Exhibit A. The wallsign identified as 5425 Santa Monica Blvd - West Facing Wallsign on Exhibit "A" to the Management Agreement (the "Wallsign") is deleted from Exhibit "A" and is no longer subject to the terms and conditions of the Management Agreement. Attached to this Fifth Amendment is a revised Exhibit "A", reflecting the removal of the Wallsign from the Management Agreement.

3. Notice. Owner's notice address in Section 7 of the Management Agreement is deleted and replaced with the following:

VIRTUAL MEDIA GROUP, INC.
1714 N. McCadden Pl, #3408
Los Angeles, California 90028
(323) 428-6500

4. Counterparts. This Fifth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fifth Amendment, signatures transmitted by electronic PDF will be binding to the same extent as original signatures.

5. Miscellaneous. Except as specifically modified in this Fifth Amendment, the Management Agreement will continue in full force and effect in accordance with its terms. In the event that any of the terms or conditions of the Management Agreement conflict with this Fifth Amendment, the terms and conditions of this Fifth Amendment will control.

6. No Default. As of the date of this Fifth Amendment, the parties mutually represent and warrant no breach or default exists under the Management Agreement and no state of facts which, with notice, the passage of time, or both, would result in a breach or default of the Management Agreement.

7. Binding. The covenants, agreements, terms and conditions contained in this Fifth Amendment bind and inure to the benefit of the parties of this Fifth Amendment and their respective successors and assigns.

8. Modifications. This Fifth Amendment may not be changed orally but only by an agreement in writing signed by the party against which enforcement of any waiver, change, modification or discharge is sought.

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fifth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:______________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:__________________________
Name: Mark Becker
Its: Manager

Exhibit "A"

1. 520 E 15th St. Los Angeles, CA - East, West & South Facing Wallsigns
2. 1351 Elwood St. Los Angeles, CA - West Facing Wallsign
3. 5300 Santa Monica Blvd - West Facing Wallsign

Becker has a pre-existing lease for the north face of the building at 1106 North Vine Street, Los Angeles, California and the east face of such building is currently leased to Total Outdoor. Nothing in this Agreement is intended to govern or convey any rights to Owner in connection herewith.

# NEW BILLBOARD MANAGEMENT AGREEMENT
# (11075 Santa Monica – East and West)

This New Billboard Management Agreement is made as of this 25th day of March, 2024, by and between Virtual Media Group Inc., a California corporation ("Owner"), and Becker Boards, L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, Owner is the owner of the east and west facing wallsigns located at 11075 Santa Monica Boulevard, Los Angeles, California (the "Wallsigns");

WHEREAS, Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, as amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020, and as further amended by that certain Sixth Amendment to Billboard Management Agreement dated March 25, 2024 (the "Sixth Amendment") (collectively, the "Management Agreement") with respect to the Wallsigns and certain other billboards and wallsigns located in the Los Angeles, California metropolitan area. A copy of the Management Agreement is attached to this Agreement as Exhibit "A";

WHEREAS, the Sixth Amendment removed the Wallsigns from the Management Agreement; and

WHEREAS, Owner desires to hire Becker to sell ad space on the Wallsigns under the same terms and conditions of the Management Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **INCORPORATION**. The terms and conditions of the Management Agreement are incorporated and integrated into this New Billboard Management Agreement, and as incorporated and integrated is hereafter collectively referred to as the "Agreement".

2. **APPLICATION**. This Agreement applies and limits the rights and obligations granted under the Management Agreement to only those rights and obligations related to the Wallsigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

"**<u>OWNER</u>**"

Virtual Media Group, Inc.,
a California corporation

By:__________________________________
Name: J. Keith Stephens
Its: President

"**<u>BECKER</u>**"

Becker Boards, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:__________________________________
Name: Mark Becker
Its: Manager

EXHIBIT A

MANAGEMENT AGREEMENT

[See attached]

## SECOND BILLBOARD MANAGEMENT AGREEMENT

This Second Billboard Management Agreement ("Second Agreement") is made as of this 13th day of September, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS , L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker are parties to that Billboard Management Agreement dated July 1, 2018 as amended by that certain First Amendment To Billboard Management Agreement dated August 29, 2018 (collectively, the "First Amended Agreement") relating solely to the signs at the four specific addresses described in Exhibit "A" thereto;

WHEREAS, nothing in this Second Agreement is intended in anyway whatsoever to modify, affect or impact in any respect the obligations described in the First Amended Agreement except as explicitly provided below;

WHEREAS, an affiliate of Becker has a pre-existing lease for the north face of the building located at 1106 North Vine Street, Los Angeles, California (the "Vine Building") and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, Total Outdoor currently leases the east face of the Vine Building and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, VMG was one of the successful plaintiffs in that certain 2003 Permanent Injunction action against the City of Los Angeles referred to as case number CV 00-9913 (the "Injunction"), affirmed as to both parties by the federal court in 2006, in connection with those certain Wallsigns (collectively, the "Injunction Wallsigns") identified in the Injunction;

WHEREAS, the Injunction was only obtained after years of contentious litigation, including a successful interlocutory appeal to the Ninth Circuit, and the expenditure of hundreds of thousands of dollars in attorneys' fees, and VMG has invested a very substantial amount of time and resources in the Injunction Walls;

WHEREAS, nothing in this Second Agreement is intended in any way to transfer to Becker any interest in the Injunction, and VMG will at all times remain the owner of the rights described in the Injunction and any permits, licensees or entitlements obtained through use of the Injunction;

WHEREAS, VMG desires to engage Becker to market the out of home advertising signs identified in Exhibit "A;" including some of the Injunction Wallsigns (hereafter the "Second Agreement Signs") and handle the billing and collections for the same and Becker desires to accept such engagement on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **PRIMARY ROLE OF BECKER**. Becker shall use commercially reasonable efforts to lease the Second Agreement Signs on terms and conditions reasonably acceptable to both Becker and VMG (each such fully executed lease is referred to individually herein as a "Lease" and collectively as the "Leases"; each such landlord as a "Landlord" and collectively as the "Landlords"; and the location of each such building is referred to individually herein as a "Location" and collectively as the "Locations"). Additionally, Becker shall be the sole and exclusive agent for ad sales on the Second Agreement Signs and shall use commercially reasonable efforts to sell advertising on them.

2. **TIME FOR PERFORMANCE.**

180 Days

**2.1** ~~**1 Year Deadline**~~. As to each individual Location, Becker shall have six months from the execution and delivery of this Second Agreement (the "Performance Deadline") to negotiate with each of the applicable Landlords and enter into a Lease with such Landlords (the "Performance Condition"). As to any Location which Becker fails to satisfy the Performance Condition by the Performance Deadline or the Lease is lawfully terminated by either the Landlord or Becker, any rights granted to Becker by this Second Agreement may be terminated by VMG with respect to each such Location. It is anticipated that Becker may not be successful in satisfying the Performance Condition for all of the Locations by the Performance Deadline. In such event, except as otherwise stated in the last sentence of this Section 2.1, this Second Agreement will remain in full force and effect only as to those Locations which Becker has satisfied the Performance Condition by the Performance Deadline. VMG may, but is not required to, extend the Performance Deadline in writing if it deems in its sole discretion that Becker has made substantial progress as to any specific Location. Notwithstanding anything to the contrary, the Performance Deadline shall be deemed extended and waived with respect to any Lease which VMG approves in writing after the Performance Deadline.

**2.2** **Injunction**. Subject to the following sentence, it is the intention of VMG to use the sign square footage for any of the Second Agreement Signs as well as other Injunction Wallsigns which are not ultimately leased for the purpose of negotiating a relocation agreement with the City of Los Angeles under the local municipal code and Business and Professions code section 5412. Notwithstanding anything to the contrary herein, VMG will not attempt to relocate the square footage on any Second Agreement Signs during the term (including any renewal periods and right of first refusal periods) of Becker's Leases on the same.

Initial ______ Initial ______

3. **TERM OF AGREEMENT**. With respect to each of the Second Agreement Signs which Becker successfully leases by the Performance Deadline or for which the Performance Deadline has been extended or deemed waived, the term of this Second Agreement shall end upon the expiration date of Lease corresponding to the Location entered into by Becker and any renewals and right of first refusal periods set forth in the Leases thereof. Accordingly, the term of this Second Agreement may be different for each of the Second Agreement Signs. For clarity, it is the intention of VMG and Becker that the term of this Second Agreement as to each individual Location shall correspond to the length of the Lease Becker is able to negotiate for the specific, corresponding Location, including all renewals and rights of first refusal periods set forth in the applicable Leases.

4. **BECKER AD SALES FUNCTIONS**. Becker shall plan and administer all activities related to the ad sales on the Second Agreement Signs. These activities shall include, but are not limited to, making the rental payment under the Leases during the term of this Agreement, directing ad sales to end users, cooperating with ad agencies, media buyers, organizations and other individuals and companies so as to coordinate the marketing activities for the Second Agreement Signs. Upon request from VMG from time to time (no more often than weekly), Becker shall update VMG on the status of any recent holds.

**4.1 Marketing Materials**. Becker shall be responsible for the preparation of a photo sheet for each of the faces of the Second Agreement Signs and inclusion of the Second Agreement Signs faces on the web site where other Becker related signs are displayed. Additionally, Becker may install a Becker Boards "apron" logo or name at the bottom of each Second Agreement Sign (and Becker may remove or cover up any existing "apron" logos and/or contact information on the Second Agreement Signs in an effort to help avoid confusion on who to contact for advertising on the same and such other identification information as Becker may deem appropriate from time to time. From time to time, Becker may also install an "available" ad on any of the faces of the Second Agreement Signs. All costs associated herewith shall be borne solely by Becker.

**4.2 Information Distribution**. Becker shall use commercially reasonable efforts to market ad sales for the Second Agreement Signs. In connection with its responsibilities under this Agreement, Becker shall include the applicable Second Agreement Signs faces on responses to the applicable RFPs, show the Second Agreement Signs faces on the web site used by Becker to market its signs, follow up with inquiries related to ad sales on the Second Agreement Signs, and cooperate with outside agencies, organizations and individuals that may be interested in purchasing ads on the Second Agreement Signs either for themselves or others. Becker Shall Provide At Least Bi Monthly Hold's & Sale contract updates

5. **PAYMENTS**.

Upon the mutual execution and delivery of this Second Agreement and the First Amended Agreement, Becker shall advance the sum of $50,000 to VMG for its services (the "Advance"). In connection with each ad sale occurring during the Term of this Agreement and any renewals or extensions thereof and subject to the following sentence, after fully reimbursing Becker for the cumulative sum of: (i) VMG's forty-five percent (45%) share of all prior "Deductions" that have not been previously been deducted from VMG's share, and (ii) 100% of the Advance, each month Becker shall pay VMG an amount equal to forty-five percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Second Agreement Signs during the immediately preceding calendar month from the Second Agreement Signs. "Adjusted Gross Income" is defined as follows: all advertising revenues (including printing and posting charges) received by Becker during the immediately preceding calendar month from the Second Agreement Signs, less 45% of the following "Deductions": (a) rent and other charges paid by Becker to the Landlords under the Leases, (b) electricity bills paid by Becker for the Second Agreement Signs, (c) any customer printing, posting and removal charges paid by Becker on the Second Agreement Signs, (d) all City of Los Angeles and/or state fees, charges, and payments paid by Becker for the Second Agreement Signs, (e) any sales tax on the ad income paid by Becker or other similar charges relating to the Second Agreement Signs, any third party costs paid by Becker for lights, bulb replacements,

window modifications and/or replacements, and other improvements associated with the Wallsigns, (f) credit card fees incurred by Becker in connection with accepting payments from advertisers on the Wallsigns, and (g) property and liability insurance premiums and deductibles paid by Becker for insurance required under the Leases.

<u>5.1</u> Becker shall invoice and collect on its ad sales on the Second Agreement Signs using its normal practices and deposit such sums in Becker's bank account or that of one of its affiliates. Within twenty (20) days after the month immediately following the clearing of any check(s) for payment relating to ad sales on the Second Agreement Signs, Becker shall send a check to VMG for VMG's share of the ad sales revenue that may then be due to VMG as set forth herein.

<u>5.2</u> Notwithstanding anything to the contrary herein, Becker shall be entitled to recoup 100% of the Advance out of what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under this Agreement. To the extent that there is not enough Adjusted Gross Income to cover any amounts owed to Becker in any month, the shortfall shall be carried over to the next month, next year, etc. until such full amounts paid by Becker have been recouped by Becker as set forth herein.

6. PERMITS, LICENSES AND ENTITLEMENTS. As indicated above, VMG has spent substantial time and effort obtaining the right to operate the Second Agreement Signs, including those described in the Injunction. Nothing in this Second Agreement in any way conveys to Becker any interest whatsoever in the Injunction. Becker specifically acknowledges that VMG will at all times remain the owner of the rights described in the Injunction and will likewise be the owner of any all rights and government entitlements, including but not limited to local and state permits obtained to operate the Second Agreement Signs, however, VMG agrees to allow Becker to use the same during the term of this Second Agreement.

7. **<u>INDEMNIFICATIONS AND INSURANCE</u>**.

7.1 Becker hereby agrees to indemnify, defend (with council of VMG's choosing) and hold VMG harmless from any claim or cause of action, made by any party which is based upon the wrongful conduct or misrepresentation of any kind by Becker or its agents. VMG hereby agrees to indemnify, defend (with council of Becker's choosing) and hold Becker harmless from any claim or cause of action made by any party which is based upon the wrongful conduct or misrepresentation of any kind by VMG and/or any violations, fines, or damages, arising out of the operation of the Second Agreement Signs due to a violation or claim that some or all of the Second Agreement Signs are being used for outdoor advertising purposes in violation of the law. Notwithstanding anything to the contrary herein, with respect to each Lease where: (i) a right to cancel a Lease occurs per the terms and conditions of the Lease, (ii) the Wallsign is obstructed, or (iii) a notice of violation is issued in connection with the use of the applicable Wallsign for outdoor advertising purposes, Becker may notify Owner that it is cancelling such Lease(s) from this Agreement and thereafter, Becker shall not be responsible for making Lease payments on such Lease(s).

7.2 Notwithstanding the foregoing, Becker acknowledges that the Second Agreement Signs are protected by the Injunction but have no permits. It is specifically agreed that VMG will use its best efforts to employ the Injunction in order to get any sign permits or other entitlement that may be necessary for the operation of the Second Agreement Signs, if any.

8. **NOTICES.** All payments, notices, requests, demands, approvals, or other communications provided for or arising under this Agreement shall be in writing and shall be: a) delivered in person to an agent or officer of the party to whom directed; or b) delivered via certified mail, facsimile, or overnight courier (such as FedEx) to the other party or parties at the address or addresses set forth below, or at such other addresses as may be submitted by either party in writing to the other party.

To VMG:

VIRTUAL MEDIA GROUP INC.
1714 N McCadden Pl, #3320
Los Angeles, CA 90028
1-323-428-6500

To Becker:

4234 E Indian School Dr.
Phoenix, AZ 85018
Fax: 602-368-4358
Attention: Mark Becker or Joseph White

9. **BOOKS AND RECORDS.** Upon reasonable request, no more often than once per calendar year, VMG shall have the right during Becker's normal business hours to inspect and audit the books and records of Becker relating to the revenues generated from the Second Agreement Signs for the immediately preceding twelve (12) month period, and Becker shall make all such matters available to VMG within five (5) business days of such request. If Becker's revenues are understated for such period, Becker will issue a check for the difference within five (5) business days of discovery of any such understatement. If there has been an overpayment for such period, VMG shall issue a check to Becker for the difference within five (5) days from the discovery of any such overpayment. Notwithstanding anything to the contrary herein, with each monthly report summarizing what it owed to VMG, such report shall detail any Deductions.

10. **MISCELLANEOUS**

10.1 In the event either party hereto institutes legal action to enforce the provisions of this Agreement, the losing party agrees to pay the prevailing party reasonable attorneys' fees incurred in said action.

10.2 Neither party to this Agreement may assign any of its rights, liabilities or obligations under this Agreement without the written consent of the other which may be withheld in the non-requesting party's sole and absolute discretion .

10.3 The provisions of this Agreement constitute the entire Agreement of the parties, and may only be changed by written amendment signed by duly authorized officers of the parties.

10.4 No party shall be deemed in breach of this Agreement unless and until notified by the other of the claimed breach or default and the breaching or defaulting party's failure to cure the same within ten (10) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**VMG:**

By:____________________
Virtual Media Group Inc.
J. Keith Stephens, President

**BECKER:**

By:____________________
Joseph White, Member

Exhibit "A"

1. 5300 Santa Monica Blvd, Los Angeles, CA;
2. 1106 North Vine Street (West and South facing walls only; North and East facing walls are specifically excluded from this Agreement), Los Angeles, CA;
3. 610 El Segundo Blvd, Los Angeles, CA;
4. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
5. 9911 W. Pico Bd., Los Angeles, CA;
6. 1800 Argyle Avenue, Los Angeles, CA;
7. 1860 Vine St., Los Angeles, CA, East face wall only;
8. 6017 W. Sunset Blvd., Los Angeles, CA;
9. 10350 Santa Monica, Los Angeles, CA (design review sign off to be done by VMG);
10. 25060 Ventura Blvd, Los Angeles, CA (design review sign off to be done by VMG); and
11. 5425 Santa Monica Blvd., Los Angeles, CA.

**FIRST AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT and THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT**

This First Amendment To Second Billboard Management Agreement ("First Amendment to 2nd Agreement") and Third Amendment to Billboard Management Agreement ("Third Amendment to 1st Agreement") is made as of this 30th day of January, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management agreement dated July 1, 2018, as amended by that certain First Amendment and Second Amendment thereto dated August 29, 2018 and September 18, 2018 respectively (collectively, the "1st Agreement")

WHEREAS, Owner and BB Small previously entered into that certain Second Billboard Management Agreement dated September 13tht, 2018 (the "2nd Agreement"); and

WHEREAS, the parties desire to amend the 1st Agreement and the 2nd Agreement (collectively, the "Agreements") as set forth herein.

WHEREAS, this First Amendment to 2nd Agreement and Third Amendment to 1st Agreement are collectively referred to herein as the "January 30th, 2019 Amendment".

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the Agreements as follows:

**AGREEMENTS**

1. **CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new No. 12 is here by added to Exhibit "A" of the 2nd Agreement for a new location and it shall read as follows: "12. 1700 Wall, Los Angeles, CA".

2. **$13,000 ADVANCE.** BB Small has advanced the sum of $13,000 (the "Advance") to Owner against the first sums that BB Small would otherwise owner to Owner under either or both of the Agreements. The Advance shall be repaid out of Owner's share of monies that BB Small would otherwise owe to Owner until such Advance has been fully repaid to BB Small.

3. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the Agreements, between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the Agreements remain as stated therein and shall not be repeated in their entirely in this January 30th, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this January 30th, 2019 Amendment as of the day and year first above written.

**OWNER:** **BB SMALL:**

By: ______________________
Virtual Media Group Inc.
J. Keith Stephens, President

By: ______________________
Becker Boards Small, L.L.C.
Joseph White, authorized Member

**SECOND AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Second Amendment to Second Billboard Management Agreement ("Second Amendment to 2nd Agreement") is made as of this 7th day of May, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker"). JKS

**RECITALS**

WHEREAS, Owner and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019; and

WHEREAS, the parties desire to further amend the 2nd Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to further amend the 2nd Agreement as follows:

**1. CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new site is hereby added to Exhibit "A" of the 2nd Agreement as follows: "13. 5425 Santa Monica Blvd. Los Angeles, CA 90029 (East Wall) (hereafter "New Site").

**2. ADVANCE PAYMENT:** Upon execution of this agreement, BB Small and Becker will deliver to Owner a check in the sum of $15,000 (the "Advance Payment").

**3. DELIVERY OF LEASE.** Within three business day, no later than May ~~8~~ 10TH, 2019, Owner shall deliver to BB Small and Becker a fully executed lease for the New Site in the form attached hereto as Exhibit "A." JKS

**4. RECOUPMENT OF ADVANCE PAYMENT** Becker shall be entitled to recoup the Advance Payment as follows:

a. If Owner delivers the lease described in paragraph 3, then BB Small and Becker Boards shall be entitled to recover $5,000 (and any other sums owed to Becker under the Second Agreement) from what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under the Second Agreement. The remaining $10,000 balance will not be recoverable.

b. If Owner fails to deliver the lease described in paragraph 3, then Becker shall be entitled to recover the entire Advance Payment (and any other sums owed to Becker under the Second Agreement) from the Second Agreement Signs.

**5. REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the 19STCP004822nd Agreement is hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the

Agreements remain as stated therein and shall not be repeated in their entirely in this May 7, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties have executed this May 7, 2019 Amendment as of the date and year first written above.

VMG:

By_______________

J. Keith Stephens, President

BECKER BOARDS CALIFORNIA:

By_______________

Joseph White, authorized Member

# THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT

This Third Amendment to Second Billboard Management Agreement ("Third Amendment to 2nd Agreement") is made as of this 13th day of June, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019;

WHEREAS, the parties previously executed the Second Amendment to Second Billboard Management Agreement dated May 3, 2019;

WHEREAS, Becker currently maintains off-site adverting signs on the West and South Walls of the building located at 1106 N. Vine St. Los Angeles, CA 90038 (hereafter the "Property") which are the subject of the above described agreements between VMG and Becker (collectively referred to herein as the "Management Agreements");

WHEREAS, Becker also operates an off-site advertising sign on the North Wall (hereafter the "North Wall") of the Property which is not subject the subject of the Management Agreements; and

WHEREAS, Becker has received an Order to Comply from the City of Los Angeles for the North Wall questioning its legal status.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. **<u>ADVANCE PAYMENT:</u>** Upon execution of this agreement, BB Small and Becker will deliver to VMG a check in the sum of $20,000 (the "Advance Payment").

2. **<u>RESOLUTION OF ORDER TO COMPLY:</u>** Upon receipt of the Advance Payment, VMG will use its best efforts to resolve the Order to Comply issued against the off-site advertising sign on the North Wall of the Property, including, but not limited to, extending to the North Wall the protection of the 2003 Permanent Injunction issued against the City of Los Angeles by the Federal District Court in case number CV 00-9913.

3. **RECOUPMENT OF ADVANCE PAYMENT:** In addition to recoupment of all other sums to be reimbursed to Becker prior to making any payments to VMG, Becker shall be entitled to recoup the Advance Payment from the first $20,000 dollars received from advertising revenue generated from the walls that are the subject of the Second Agreement

4. **VMG OBTAINS NO INTEREST IN NORTH WALL:** Nothing in this OTC Agreement creates any rights in VMG to the North Wall or the revenue generated by it.

5. **REAFFIRMATION OF TERMS:** Except as expressly modified herein, all of the terms, covenants and provisions of the Management Agreements are hereby confirmed and ratified and shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this June 13, 2019 Amendment as of the date and year first written above.

VMG:

By____________________

J. Keith Stephens, President

BECKER BOARDS CALIFORNIA:

By____________________

Joseph White, authorized Member

**FOURTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fourth Amendment to Second Billboard Management Agreement (this "**Fourth Amendment**") is entered into as of September 23, 2019, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**"), and BECKER BOARDS, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019 (the "**First Amendment**"), as further amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, and as further amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019 (as amended, the "**Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Agreement.

B. The First Amendment was inadvertently signed by Becker Boards Small, L.L.C., an Arizona limited liability company.

C. Owner and Becker desire to confirm that the Agreement, as amended, are the obligations of Becker.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Third Amendment as if fully restated herein.

2. Parties. Owner and Becker hereby confirm that they are the parties to the Agreement. Although Becker did not sign the First Amendment, Becker hereby affirms and ratifies the First Amendment as if Becker had been a signer to such First Amendment. Owner and Becker hereby confirm that BB Small has never been a party to the Agreement and BB Small has no liabilities and obligations under the Agreement.

3. New Billboard. Owner and Becker are entering into that certain Outdoor Advertising Purchase Agreement ("**Purchase Agreement**"), whereby Becker will acquire, in accordance with the terms of the Purchase Agreement, Owner's interest in that certain Outdoor Advertising Lease Agreement, dated November 16, 2018, with Rabadi Service Station, Inc., as landlord, as supplemented by that certain Addendum, dated September 4, 2019 (collectively, the "**6301 Lease**"), for an outdoor advertising display on property located at 6301 Santa Monica

Boulevard, Los Angeles, CA (the "**6301 Site**"). Upon the assignment of the 6301 Lease from Owner to Becker (the "**Assignment Date**"), the 6301 Site shall be deemed one of the Locations and the 6301 Lease shall be deemed one of the Leases. The Adjusted Gross Income received by Becker for the 6301 Site shall be handled and distributed in accordance with the provisions of Section 5 of the Agreement. Becker and Owner confirm that the Adjusted Gross Income, after Deductions, shall be split 45% to Owner and 55% to Becker (the "**6301 Distributions**"). In accordance with the terms of the Purchase Agreement, Becker has paid to Owner the sum of Sixty Thousand and No/100 Dollars ($60,000.00) as an earnest money deposit (the "**6301 Deposit**"). In the event the Purchase Agreement is terminated, and Becker does not become the tenant under the 6301 Lease, then the 6301 Deposit shall be repaid by Owner to Becker. Becker shall first apply the 6301 Deposit to any amounts owed to Owner by Becker as part of the 6301 Distributions until the 6301 Deposit has been fully repaid to Becker.

4. Exhibit. Effective as of the Assignment Date, a new No. 13 is hereby added to Exhibit A to the Agreement and it shall read as follows:

"13. 6301 Santa Monica Boulevard, Los Angeles, CA"

5. Counterparts. This Fourth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fourth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

6. Miscellaneous. In the event that any of the terms or conditions of the Agreement conflict with this Fourth Amendment, the terms and conditions of this Fourth Amendment shall control.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fourth Amendment as of the day and year first above written.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By: [signature]
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By: [signature]
Name: Mark Becker
Its: Manager

**FIFTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fifth Amendment to Second Billboard Management Agreement (this "**Fifth Amendment**") is entered into as of March 4, 2020, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**" or "**VMG**"), and Becker Boards, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, and as further amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019 (as amended, the "**Second Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Second Agreement.

B. Owner and Becker desire to provide that (i) one (1) wall sign located on the east side of the building located at 10350 Santa Monica Boulevard, (ii) one (1) wall sign located on the east side of the building located at 11075 Santa Monica Boulevard, and (iii) one (1) wall sign located on the west side of the building located at 11075 Santa Monica Boulevard (collectively, the "**Additional Wallsigns**"), shall become subject to the terms of the Second Agreement as set forth herein.

C. Owner and Becker desire to also amend certain provisions of the Second Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Second Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Fifth Amendment as if fully restated herein.

2. Performance Deadline. Section 2.1 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

"2.1 Intentionally Deleted."

3. Term. Second 3 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

JKS
MNS

"3. TERM OF AGREEMENT. The initial term of this Second Agreement shall be five (5) years (the "Term") from the date of this Second Agreement, except with regard to provisions of this Second Agreement that survive the expiration of the Term. Upon the expiration of the initial five (5) year Term, the Second Agreement shall be automatically renewed for an additional term of five (5) years unless at least ninety (90) days prior the expiration of the initial Term either party notifies the other that it desires to terminate this Second Agreement (effective upon the expiration of the initial Term). Notwithstanding anything to the contrary herein, if Becker assists Owner in extending the term of any of the Leases or Additional License Agreements, the then current term shall end on the later of: (i) the then current term of this Second Agreement, or (ii) the latest expiration date of any Leases or Additional License Agreements that Becker assists Owner in extending. If Owner desires to sell some or all of the Wallsigns or Additional Wallsigns during the term of this Second Agreement or within two (2) years after the end of the term provided Becker is not in default or breach of this Second Agreement beyond any applicable notice and cure periods, Becker shall have a right of first refusal to purchase the same. If Becker desires to exercise its right, Becker must exercise it within thirty (30) days after Owner provides Becker with a copy of the third party purchase agreement and all other related transaction documents for such Wallsigns or Additional Wallsigns."

4. Wallsigns. The Additional Wallsigns are hereby added to Exhibit A to the Second Agreement.

5. Second Advance Payment. Concurrent with the execution of this Fifth Amendment, Becker shall pay to Owner the sum of Fifty Thousand and No/100 Dollars ($50,000.00) (the "**Second Advance Payment**"). Becker shall be entitled to recoup the Second Advance Payment from the Adjusted Gross Income earned on the Additional Wallsigns in twelve equal monthly installments of Four Thousand Sixty-Six and 67/100 Dollars ($4,166.67). Becker shall pay Owner an amount equal to forty percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Additional Wallsigns on the immediately preceding calendar month from the Additional Wallsigns.

6. No Assignment of Additional License Agreements. Owner shall remain the licensee under (a) that certain Outdoor Advertising License Agreement, dated April 28, 2016, with LHS Equities LLC, as licensor, for the outdoor advertising display located at 10350 Santa Monica Boulevard, Los Angeles, CA, and (b) that certain Outdoor Advertising Billboard License Agreement, dated September 27, 2016, with Westwood Capital Ventures, LLC, as licensor, for the outdoor advertising displays located at 11075 Santa Monica Boulevard, Los Angeles, CA (collectively, the "**Additional License Agreements**"). Owner shall be responsible for all financial obligations under the Additional License Agreements, including, but not limited to, any license fees or revenue sharing required thereunder. Owner hereby represents and warrants to Becker that the Additional License Agreements are valid and subsisting and in full force and effect in accordance with its terms and constitutes the legal, valid, binding, and enforceable obligation of the Owner and licensor thereunder; neither Owner nor the licensor is in default; and no licensor has given any notice to Owner of intention of instituting litigation with respect to its Additional License Agreement or terminating the license thereunder.



RKS
MMB

7. Right of First Refusal.

A. As set forth in the Second Agreement, Owner was one of the named plaintiffs in Federal District Court Case Number CV 00-9913, in which the court issued the Injunction against the City of Los Angeles protecting the operation of a series of wall signs. The City's Municipal Code allows for the "relocation" of signs to new sites where both the sign owner and City come to a mutual agreement. However, nothing in this Fifth Amendment in any way obligates Owner to enter into any relocation agreement with the City nor restricts the terms of any such agreement which shall remain solely under the control of Owner. Furthermore, nothing in this Fifth Amendment requires Owner to sell any new, relocated sign.

B. If Owner decides, it its sole and unfettered discretion, to sell any new, relocated sign(s), it will give Becker notice. Becker will then have ten (10) business days from receipt of such notice (sent by overnight delivery such as Fed Ex) to negotiate with Owner a purchase price reflecting fair market value to be mutually agree by the parties. If the parties cannot agree on a fair market value or if Becker does not respond by the close of business on the tenth (10th) business day after receiving notice, it will constitute a rejection, and the right of first refusal shall expire (the "Expiration Date"). If Owner does not sell such billboard to an unrelated third party within sixty (60) after the Expiration Date, Becker's right of first refusal shall automatically be renewed with respect to such sign.

C. This right of first refusal shall be in effect be in effect for the entirety of the term of the Second Agreement.

8. Counterparts. This Fifth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fifth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

9. Miscellaneous. In the event that any of the terms or conditions of the Second Agreement conflict with this Fifth Amendment, the terms and conditions of this Fifth Amendment shall control.

*[Signature Page Follows]*



JKS AMB

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fifth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:____________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:____________________________
Name: Mark Becker
Its: Manager

# SIXTH AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT

This Sixth Amendment to Second Billboard Management Agreement (this "Sixth Amendment") is entered into as of March 25, 2024, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("Owner"), and BECKER BOARDS, L.L.C., a California limited liability company ("Becker").

## RECITALS

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "Original Agreement"), as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, and as further amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020 (the "Fifth Amendment") (collectively, the "Management Agreement") with respect to certain billboards and wallsigns located in the Los Angeles, California metropolitan area.

B. Owner and Becker desire to amend the Management Agreement and remove two of the listed signs from the terms and provisions of the Management Agreement.

NOW, THEREFORE, in consideration of the Recitals, the Management Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Owner and Becker agree as follows:

## AGREEMENT

1. Recitals. The recitals set forth above are incorporated into the body of this Sixth Amendment.

2. Exhibit A. The following wallsigns (collectively, the "Wallsigns") are deleted from Exhibit "A" and are no longer subject to the terms and conditions of the Management Agreement: (i) the wallsign identified as 1106 North Vine Street (West and South facing walls only) on Exhibit "A" to the Original Management Agreement, and (ii) the east and west facing wallsigns located on the east side of the building located at 11075 Santa Monica Boulevard (added in the Fifth Amendment). Attached to this Sixth Amendment is a revised Exhibit "A", reflecting the removal of the Wallsigns from the Management Agreement.

3. Notice. Owner's notice address in Section 7 of the Management Agreement is deleted and replaced with the following:

VIRTUAL MEDIA GROUP, INC.<br>
1714 N. McCadden Pl, #3408<br>
Los Angeles, California 90028<br>
(323) 428-6500

4. Counterparts. This Sixth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Sixth Amendment, signatures transmitted by electronic PDF will be binding to the same extent as original signatures.

5. Miscellaneous. Except as specifically modified in this Sixth Amendment, the Management Agreement will continue in full force and effect in accordance with its terms. In the event that any of the terms or conditions of the Management Agreement conflict with this Sixth Amendment, the terms and conditions of this Sixth Amendment will control.

6. No Default. As of the date of this Sixth Amendment, the parties mutually represent and warrant no breach or default exists under the Management Agreement and no state of facts which, with notice, the passage of time, or both, would result in a breach or default of the Management Agreement.

7. Binding. The covenants, agreements, terms and conditions contained in this Sixth Amendment bind and inure to the benefit of the parties of this Sixth Amendment and their respective successors and assigns.

8. Modifications. This Sixth Amendment may not be changed orally but only by an agreement in writing signed by the party against which enforcement of any waiver, change, modification or discharge is sought.

IN WITNESS WHEREOF, Owner and Becker have duly executed this Sixth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:______________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:______________________________
Name: Mark Becker
Its: Manager

Exhibit "A"

1. 5300 Santa Monica Boulevard, Los Angeles, CA;
2. 610 El Segundo Boulevard, Los Angeles, CA;
3. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
4. 9911 W. Pico Boulevard, Los Angeles, CA;
5. 1800 Argyle Avenue, Los Angeles; CA;
6. 1860 Vine Street, Los Angeles, CA (East face wall only);
7. 6017 W. Sunset Boulevard, Los Angeles, CA;
8. 10350 Santa Monica, Los Angeles, CA (East Wall);
9. 25060 Ventura Boulevard, Los Angeles, CA (design review sign off to be done by VMG);
10. 1700 Wall, Los Angeles, CA;
11. 5425 Santa Monica Boulevard, Los Angeles, CA (East Wall); and
12. 6301 Santa Monica Boulevard, Los Angeles, CA.

**EXHIBIT "B"**

# CONSENT TO ASSIGNMENT OF BILLBOARD MANAGEMENT AGREEMENT (11075 Santa Monica – West and East)

This Consent (this "Consent") is made as of this 25th day of March, 2024, by and between Virtual Media Group, Inc., a California corporation ("Owner"), and Becker Boards, L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, Owner is the owner of the west and east facing wallsigns located at 11075 Santa Monica Boulevard, Los Angeles, California (the "Wallsigns"); and

WHEREAS, Owner and Becker entered into that certain New Billboard Management Agreement, dated March 25, 2024 (the "Management Agreement"), with respect to the Wallsigns. A copy of the Management Agreement is attached to this Consent as Exhibit "A"; and

WHEREAS, Becker intends to sell and assign certain assets (the "Transaction") to New Tradition Outdoor, LLC, a New York limited liability company ("New Tradition"). In connection with the Transaction, the Management Agreement will be assigned by Becker to New Tradition; and

WHEREAS, Becker desires to obtain Owner's consent to the assignment of the Management Agreement to New Tradition; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **ASSIGNMENT**. Section 10.2 of the Management Agreement grants Owner the right to consent, exercisable in its sole and absolute discretion, to any proposed assignment of the Management Agreement by Becker. By its signature below, Owner consents to the assignment of the Management Agreement to New Tradition and acknowledges that (i) the consummation of the Transaction will not constitute a default or breach of the Management Agreement, (ii) the Management Agreement will remain in full force and effect, unmodified, subject to its terms, immediately following the consummation of the Transaction, and (iii) all notice requirements under the Management Agreement (in regards to form of delivery and notice, time requirements and otherwise) have been complied with (or are waived) in connection with the Transaction.

2. **REPRESENTATION**. Owner represents, to the best of Owner's knowledge, there exists no breach or default, nor state of facts which, with notice, the passage of time, or both, would result in a breach or default on the part of either Owner or Becker, and no claim, controversy, dispute, quarrel or disagreement exists between Owner and Becker.

3. **NATURE OF ASSIGNMENT**. It is specifically agreed that Becker is selling and assigning the Management Agreement to New Tradition, and that the transaction is not a novation. For the avoidance of doubt, the legal effect of the sale and assignment will render New Tradition jointly liable with Becker for all obligations described in the Management Agreement, including but not limited to, the obligation to pay the relevant rent to the property owner. Notwithstanding the foregoing, upon the expiration of the existing term of the Management Agreement (the "Term") in effect as of the Effective Date, without consideration of all extension rights under the Agreement, and all future amendments or modifications agreed to between Owner and New Tradition, Becker will automatically be released from all further obligations under the Management Agreement (including payment of any rent to the property owner) that accrues from and after the expiration of the Term.

4. **NON-INTERFERENCE**. During the term of the Management Agreement and for 24 months after the expiration or termination of the Management Agreement, neither Becker nor New Tradition shall lease, purchase or acquire in any manner any right to operate any of the Wallsigns outside of the Management Agreement.

5. **NOTICE**. Upon consummation of the assignment of the Management Agreement to New Tradition, Becker's address under the notice provision in Section 8 of the Management Agreement shall be deleted and replaced with the following:

New Tradition Outdoor, LLC
c/o New Tradition Media
588 Broadway
New York, New York 10012
Attention: Bret Richheimer
Email: bret@newtradition.com

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have executed this Consent as of the day and year first written above.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By:__________________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

Becker Boards, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:______________________________
Name: Mark Becker
Its: Manager

EXHIBIT A

MANAGEMENT AGREEMENT

[See Attached]

**NEW BILLBOARD MANAGEMENT AGREEMENT**
**(11075 Santa Monica – East and West)**

This New Billboard Management Agreement is made as of this 25th day of March, 2024, by and between Virtual Media Group Inc., a California corporation ("Owner"), and Becker Boards, L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner is the owner of the east and west facing wallsigns located at 11075 Santa Monica Boulevard, Los Angeles, California (the "Wallsigns");

WHEREAS, Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, as amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020, and as further amended by that certain Sixth Amendment to Billboard Management Agreement dated March 25, 2024 (the "Sixth Amendment") (collectively, the "Management Agreement") with respect to the Wallsigns and certain other billboards and wallsigns located in the Los Angeles, California metropolitan area. A copy of the Management Agreement is attached to this Agreement as Exhibit "A";

WHEREAS, the Sixth Amendment removed the Wallsigns from the Management Agreement; and

WHEREAS, Owner desires to hire Becker to sell ad space on the Wallsigns under the same terms and conditions of the Management Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

**AGREEMENTS**

1. **INCORPORATION**. The terms and conditions of the Management Agreement are incorporated and integrated into this New Billboard Management Agreement, and as incorporated and integrated is hereafter collectively referred to as the "Agreement".

2. **APPLICATION**. This Agreement applies and limits the rights and obligations granted under the Management Agreement to only those rights and obligations related to the Wallsigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By:_________________________________
Name: J. Keith Stephens
Its: President

"**BECKER**"

Becker Boards, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:_________________________________
Name: Mark Becker
Its: Manager

EXHIBIT A

MANAGEMENT AGREEMENT

[See attached]

# SECOND BILLBOARD MANAGEMENT AGREEMENT

This Second Billboard Management Agreement ("Second Agreement") is made as of this 13th day of September, 2018, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS , L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker are parties to that Billboard Management Agreement dated July 1, 2018 as amended by that certain First Amendment To Billboard Management Agreement dated August 29, 2018 (collectively, the "First Amended Agreement") relating solely to the signs at the four specific addresses described in Exhibit "A" thereto;

WHEREAS, nothing in this Second Agreement is intended in anyway whatsoever to modify, affect or impact in any respect the obligations described in the First Amended Agreement except as explicitly provided below;

WHEREAS, an affiliate of Becker has a pre-existing lease for the north face of the building located at 1106 North Vine Street, Los Angeles, California (the "Vine Building") and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, Total Outdoor currently leases the east face of the Vine Building and nothing in this Second Agreement nor the First Amended Agreement is intended to govern or convey any rights to VMG in connection therewith;

WHEREAS, VMG was one of the successful plaintiffs in that certain 2003 Permanent Injunction action against the City of Los Angeles referred to as case number CV 00-9913 (the "Injunction"), affirmed as to both parties by the federal court in 2006, in connection with those certain Wallsigns (collectively, the "Injunction Wallsigns") identified in the Injunction;

WHEREAS, the Injunction was only obtained after years of contentious litigation, including a successful interlocutory appeal to the Ninth Circuit, and the expenditure of hundreds of thousands of dollars in attorneys' fees, and VMG has invested a very substantial amount of time and resources in the Injunction Walls;

WHEREAS, nothing in this Second Agreement is intended in any way to transfer to Becker any interest in the Injunction, and VMG will at all times remain the owner of the rights described in the Injunction and any permits, licensees or entitlements obtained through use of the Injunction;

WHEREAS, VMG desires to engage Becker to market the out of home advertising signs identified in Exhibit "A;" including some of the Injunction Wallsigns (hereafter the "Second Agreement Signs") and handle the billing and collections for the same and Becker desires to accept such engagement on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## AGREEMENTS

1. **PRIMARY ROLE OF BECKER**. Becker shall use commercially reasonable efforts to lease the Second Agreement Signs on terms and conditions reasonably acceptable to both Becker and VMG (each such fully executed lease is referred to individually herein as a "Lease" and collectively as the "Leases"; each such landlord as a "Landlord" and collectively as the "Landlords"; and the location of each such building is referred to individually herein as a "Location" and collectively as the "Locations"). Additionally, Becker shall be the sole and exclusive agent for ad sales on the Second Agreement Signs and shall use commercially reasonable efforts to sell advertising on them.

2. **TIME FOR PERFORMANCE.**

180 Days

**2.1** ~~1 Year Deadline~~. As to each individual Location, Becker shall have six months from the execution and delivery of this Second Agreement (the "Performance Deadline") to negotiate with each of the applicable Landlords and enter into a Lease with such Landlords (the "Performance Condition"). As to any Location which Becker fails to satisfy the Performance Condition by the Performance Deadline or the Lease is lawfully terminated by either the Landlord or Becker, any rights granted to Becker by this Second Agreement may be terminated by VMG with respect to each such Location. It is anticipated that Becker may not be successful in satisfying the Performance Condition for all of the Locations by the Performance Deadline. In such event, except as otherwise stated in the last sentence of this Section 2.1, this Second Agreement will remain in full force and effect only as to those Locations which Becker has satisfied the Performance Condition by the Performance Deadline. VMG may, but is not required to, extend the Performance Deadline in writing if it deems in its sole discretion that Becker has made substantial progress as to any specific Location. Notwithstanding anything to the contrary, the Performance Deadline shall be deemed extended and waived with respect to any Lease which VMG approves in writing after the Performance Deadline.

**2.2** **Injunction**. Subject to the following sentence, it is the intention of VMG to use the sign square footage for any of the Second Agreement Signs as well as other Injunction Wallsigns which are not ultimately leased for the purpose of negotiating a relocation agreement with the City of Los Angeles under the local municipal code and Business and Professions code section 5412. Notwithstanding anything to the contrary herein, VMG will not attempt to relocate the square footage on any Second Agreement Signs during the term (including any renewal periods and right of first refusal periods) of Becker's Leases on the same.

Initial ______ Initial ______

3. **TERM OF AGREEMENT**. With respect to each of the Second Agreement Signs which Becker successfully leases by the Performance Deadline or for which the Performance Deadline has been extended or deemed waived, the term of this Second Agreement shall end upon the expiration date of Lease corresponding to the Location entered into by Becker and any renewals and right of first refusal periods set forth in the Leases thereof. Accordingly, the term of this Second Agreement may be different for each of the Second Agreement Signs. For clarity, it is the intention of VMG and Becker that the term of this Second Agreement as to each individual Location shall correspond to the length of the Lease Becker is able to negotiate for the specific, corresponding Location, including all renewals and rights of first refusal periods set forth in the applicable Leases.

4. **BECKER AD SALES FUNCTIONS**. Becker shall plan and administer all activities related to the ad sales on the Second Agreement Signs. These activities shall include, but are not limited to, making the rental payment under the Leases during the term of this Agreement, directing ad sales to end users, cooperating with ad agencies, media buyers, organizations and other individuals and companies so as to coordinate the marketing activities for the Second Agreement Signs. Upon request from VMG from time to time (no more often than weekly), Becker shall update VMG on the status of any recent holds.

**4.1 Marketing Materials**. Becker shall be responsible for the preparation of a photo sheet for each of the faces of the Second Agreement Signs and inclusion of the Second Agreement Signs faces on the web site where other Becker related signs are displayed. Additionally, Becker may install a Becker Boards "apron" logo or name at the bottom of each Second Agreement Sign (and Becker may remove or cover up any existing "apron" logos and/or contact information on the Second Agreement Signs in an effort to help avoid confusion on who to contact for advertising on the same and such other identification information as Becker may deem appropriate from time to time. From time to time, Becker may also install an "available" ad on any of the faces of the Second Agreement Signs. All costs associated herewith shall be borne solely by Becker.

**4.2 Information Distribution**. Becker shall use commercially reasonable efforts to market ad sales for the Second Agreement Signs. In connection with its responsibilities under this Agreement, Becker shall include the applicable Second Agreement Signs faces on responses to the applicable RFPs, show the Second Agreement Signs faces on the web site used by Becker to market its signs, follow up with inquiries related to ad sales on the Second Agreement Signs, and cooperate with outside agencies, organizations and individuals that may be interested in purchasing ads on the Second Agreement Signs either for themselves or others. Becker Shall Provide At Least Bi Monthly Hold & Sale contract updates

5. **PAYMENTS**.

Upon the mutual execution and delivery of this Second Agreement and the First Amended Agreement, Becker shall advance the sum of $50,000 to VMG for its services (the "Advance"). In connection with each ad sale occurring during the Term of this Agreement and any renewals or extensions thereof and subject to the following sentence, after fully reimbursing Becker for the cumulative sum of: (i) VMG's forty-five percent (45%) share of all prior "Deductions" that have not been previously been deducted from VMG's share, and (ii) 100% of the Advance, each month Becker shall pay VMG an amount equal to forty-five percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Second Agreement Signs during the immediately preceding calendar month from the Second Agreement Signs. "Adjusted Gross Income" is defined as follows: all advertising revenues (including printing and posting charges) received by Becker during the immediately preceding calendar month from the Second Agreement Signs, less 45% of the following "Deductions": (a) rent and other charges paid by Becker to the Landlords under the Leases, (b) electricity bills paid by Becker for the Second Agreement Signs, (c) any customer printing, posting and removal charges paid by Becker on the Second Agreement Signs, (d) all City of Los Angeles and/or state fees, charges, and payments paid by Becker for the Second Agreement Signs, (e) any sales tax on the ad income paid by Becker or other similar charges relating to the Second Agreement Signs, any third party costs paid by Becker for lights, bulb replacements,

window modifications and/or replacements, and other improvements associated with the Wallsigns, (f) credit card fees incurred by Becker in connection with accepting payments from advertisers on the Wallsigns, and (g) property and liability insurance premiums and deductibles paid by Becker for insurance required under the Leases.

5.1 Becker shall invoice and collect on its ad sales on the Second Agreement Signs using its normal practices and deposit such sums in Becker's bank account or that of one of its affiliates. Within twenty (20) days after the month immediately following the clearing of any check(s) for payment relating to ad sales on the Second Agreement Signs, Becker shall send a check to VMG for VMG's share of the ad sales revenue that may then be due to VMG as set forth herein.

5.2 Notwithstanding anything to the contrary herein, Becker shall be entitled to recoup 100% of the Advance out of what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under this Agreement. To the extent that there is not enough Adjusted Gross Income to cover any amounts owed to Becker in any month, the shortfall shall be carried over to the next month, next year, etc. until such full amounts paid by Becker have been recouped by Becker as set forth herein.

6. PERMITS, LICENSES AND ENTITLEMENTS. As indicated above, VMG has spent substantial time and effort obtaining the right to operate the Second Agreement Signs, including those described in the Injunction. Nothing in this Second Agreement in any way conveys to Becker any interest whatsoever in the Injunction. Becker specifically acknowledges that VMG will at all times remain the owner of the rights described in the Injunction and will likewise be the owner of any all rights and government entitlements, including but not limited to local and state permits obtained to operate the Second Agreement Signs, however, VMG agrees to allow Becker to use the same during the term of this Second Agreement.

7. **INDEMNIFICATIONS AND INSURANCE**.

7.1 Becker hereby agrees to indemnify, defend (with council of VMG's choosing) and hold VMG harmless from any claim or cause of action, made by any party which is based upon the wrongful conduct or misrepresentation of any kind by Becker or its agents. VMG hereby agrees to indemnify, defend (with council of Becker's choosing) and hold Becker harmless from any claim or cause of action made by any party which is based upon the wrongful conduct or misrepresentation of any kind by VMG and/or any violations, fines, or damages, arising out of the operation of the Second Agreement Signs due to a violation or claim that some or all of the Second Agreement Signs are being used for outdoor advertising purposes in violation of the law. Notwithstanding anything to the contrary herein, with respect to each Lease where: (i) a right to cancel a Lease occurs per the terms and conditions of the Lease, (ii) the Wallsign is obstructed, or (iii) a notice of violation is issued in connection with the use of the applicable Wallsign for outdoor advertising purposes, Becker may notify Owner that it is cancelling such Lease(s) from this Agreement and thereafter, Becker shall not be responsible for making Lease payments on such Lease(s).

7.2 Notwithstanding the foregoing, Becker acknowledges that the Second Agreement Signs are protected by the Injunction but have no permits. It is specifically agreed that VMG will use its best efforts to employ the Injunction in order to get any sign permits or other entitlement that may be necessary for the operation of the Second Agreement Signs, if any.

8. **NOTICES**. All payments, notices, requests, demands, approvals, or other communications provided for or arising under this Agreement shall be in writing and shall be: a) delivered in person to an agent or officer of the party to whom directed; or b) delivered via certified mail, facsimile, or overnight courier (such as FedEx) to the other party or parties at the address or addresses set forth below, or at such other addresses as may be submitted by either party in writing to the other party.

To VMG:

VIRTUAL MEDIA GROUP INC.
1714 N McCadden Pl, #3320
Los Angeles, CA 90028
1-323-428-6500

To Becker: 4234 E Indian School Dr.
Phoenix, AZ 85018
Fax: 602-368-4358
Attention: Mark Becker or Joseph White

9. **BOOKS AND RECORDS**. Upon reasonable request, no more often than once per calendar year, VMG shall have the right during Becker's normal business hours to inspect and audit the books and records of Becker relating to the revenues generated from the Second Agreement Signs for the immediately preceding twelve (12) month period, and Becker shall make all such matters available to VMG within five (5) business days of such request. If Becker's revenues are understated for such period, Becker will issue a check for the difference within five (5) business days of discovery of any such understatement. If there has been an overpayment for such period, VMG shall issue a check to Becker for the difference within five (5) days from the discovery of any such overpayment. Notwithstanding anything to the contrary herein, with each monthly report summarizing what it owed to VMG, such report shall detail any Deductions.

10. **MISCELLANEOUS**

10.1 In the event either party hereto institutes legal action to enforce the provisions of this Agreement, the losing party agrees to pay the prevailing party reasonable attorneys' fees incurred in said action.

10.2 Neither party to this Agreement may assign any of its rights, liabilities or obligations under this Agreement without the written consent of the other which may be withheld in the non-requesting party's sole and absolute discretion .

10.3 The provisions of this Agreement constitute the entire Agreement of the parties, and may only be changed by written amendment signed by duly authorized officers of the parties.

10.4 No party shall be deemed in breach of this Agreement unless and until notified by the other of the claimed breach or default and the breaching or defaulting party's failure to cure the same within ten (10) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**VMG:**

By:______________________
Virtual Media Group Inc.
J. Keith Stephens, President

**BECKER:**

By:______________________
Joseph White, Member

Exhibit "A"

1. 5300 Santa Monica Blvd, Los Angeles, CA;
2. 1106 North Vine Street (West and South facing walls only; North and East facing walls are specifically excluded from this Agreement), Los Angeles, CA;
3. 610 El Segundo Blvd, Los Angeles, CA;
4. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
5. 9911 W. Pico Bd., Los Angeles, CA;
6. 1800 Argyle Avenue, Los Angeles, CA;
7. 1860 Vine St., Los Angeles, CA, East face wall only;
8. 6017 W. Sunset Blvd., Los Angeles, CA;
9. 10350 Santa Monica, Los Angeles, CA (design review sign off to be done by VMG);
10. 25060 Ventura Blvd, Los Angeles, CA (design review sign off to be done by VMG); and
11. 5425 Santa Monica Blvd., Los Angeles, CA.

**FIRST AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT and THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT**

This First Amendment To Second Billboard Management Agreement ("First Amendment to 2nd Agreement") and Third Amendment to Billboard Management Agreement ("Third Amendment to 1st Agreement") is made as of this 30th day of January, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("Owner"), BECKER BOARDS SMALL, L.L.C., an Arizona limited liability company ("BB Small"), and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

**RECITALS**

WHEREAS, Owner and BB Small previously entered into that certain Billboard Management agreement dated July 1, 2018, as amended by that certain First Amendment and Second Amendment thereto dated August 29, 2018 and September 18, 2018 respectively (collectively, the "1st Agreement")

WHEREAS, Owner and BB Small previously entered into that certain Second Billboard Management Agreement dated September 13tht, 2018 (the "2nd Agreement"); and

WHEREAS, the parties desire to amend the 1st Agreement and the 2nd Agreement (collectively, the "Agreements") as set forth herein.

WHEREAS, this First Amendment to 2nd Agreement and Third Amendment to 1st Agreement are collectively referred to herein as the "January 30th, 2019 Amendment".

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to amend the Agreements as follows:

**AGREEMENTS**

1. **CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new No. 12 is here by added to Exhibit "A" of the 2nd Agreement for a new location and it shall read as follows: "12. 1700 Wall, Los Angeles, CA".

2. **$13,000 ADVANCE.** BB Small has advanced the sum of $13,000 (the "Advance") to Owner against the first sums that BB Small would otherwise owner to Owner under either or both of the Agreements. The Advance shall be repaid out of Owner's share of monies that BB Small would otherwise owe to Owner until such Advance has been fully repaid to BB Small.

3. **REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the Agreements, between Becker and Owner, are hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the Agreements remain as stated therein and shall not be repeated in their entirely in this January 30th, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this January 30th, 2019 Amendment as of the day and year first above written.

**OWNER:** **BB SMALL:**

By: ______________________
Virtual Media Group Inc.
J. Keith Stephens, President

By: ______________________
Becker Boards Small, L.L.C.
Joseph White, authorized Member

**SECOND AMENDMENT TO SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Second Amendment to Second Billboard Management Agreement ("Second Amendment to 2nd Agreement") is made as of this 7th day of May, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker"). JKS

**RECITALS**

WHEREAS, Owner and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019; and

WHEREAS, the parties desire to further amend the 2nd Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree to further amend the 2nd Agreement as follows:

**1. CHANGE TO EXHIBIT "A" of the 2nd Agreement.** A new site is hereby added to Exhibit "A" of the 2nd Agreement as follows: "13. 5425 Santa Monica Blvd. Los Angeles, CA 90029 (East Wall) (hereafter "New Site").

**2. ADVANCE PAYMENT:** Upon execution of this agreement, BB Small and Becker will deliver to Owner a check in the sum of $15,000 (the "Advance Payment").

**3. DELIVERY OF LEASE.** Within three business day, no later than May ~~8~~ 10TH, 2019, Owner shall deliver to BB Small and Becker a fully executed lease for the New Site in the form attached hereto as Exhibit "A." JKS

**4. RECOUPMENT OF ADVANCE PAYMENT** Becker shall be entitled to recoup the Advance Payment as follows:

a. If Owner delivers the lease described in paragraph 3, then BB Small and Becker Boards shall be entitled to recover $5,000 (and any other sums owed to Becker under the Second Agreement) from what would otherwise of been VMG's share of the Adjusted Gross Income generated by the Second Agreement Signs before any monies are due to VMG under the Second Agreement. The remaining $10,000 balance will not be recoverable.

b. If Owner fails to deliver the lease described in paragraph 3, then Becker shall be entitled to recover the entire Advance Payment (and any other sums owed to Becker under the Second Agreement) from the Second Agreement Signs.

**5. REAFFIRMATION OF TERMS.** Except as expressly modified herein, all of the terms, covenants and provisions of the 19STCP004822nd Agreement is hereby confirmed and ratified and shall remain unchanged and in full force and effect. Except as amended herein, all terms, covenants and provisions of the

Agreements remain as stated therein and shall not be repeated in their entirely in this May 7, 2019 Amendment but are instead incorporated herein by reference and deemed terms, covenants and provisions hereof with the same force and effect as if fully set forth herein.

IN WITNESS WHEREOF, the parties have executed this May 7, 2019 Amendment as of the date and year first written above.

| | |
|---|---|
| VMG: | BECKER BOARDS CALIFORNIA: |
| By______________ | By______________ |
| J. Keith Stephens, President | Joseph White, authorized Member |

# THIRD AMENDMENT TO BILLBOARD MANAGEMENT AGREEMENT

This Third Amendment to Second Billboard Management Agreement ("Third Amendment to 2nd Agreement") is made as of this 13th day of June, 2019, by and among, Virtual Media Group, Inc., a California Corporation ("VMG") and BECKER BOARDS L.L.C., a California limited liability company ("Becker").

## RECITALS

WHEREAS, VMG and Becker previously entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "2nd Agreement");

WHEREAS, the parties previously executed the First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019;

WHEREAS, the parties previously executed the Second Amendment to Second Billboard Management Agreement dated May 3, 2019;

WHEREAS, Becker currently maintains off-site adverting signs on the West and South Walls of the building located at 1106 N. Vine St. Los Angeles, CA 90038 (hereafter the "Property") which are the subject of the above described agreements between VMG and Becker (collectively referred to herein as the "Management Agreements");

WHEREAS, Becker also operates an off-site advertising sign on the North Wall (hereafter the "North Wall") of the Property which is not subject the subject of the Management Agreements; and

WHEREAS, Becker has received an Order to Comply from the City of Los Angeles for the North Wall questioning its legal status.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. **ADVANCE PAYMENT:** Upon execution of this agreement, BB Small and Becker will deliver to VMG a check in the sum of $20,000 (the "Advance Payment").

2. **RESOLUTION OF ORDER TO COMPLY:** Upon receipt of the Advance Payment, VMG will use its best efforts to resolve the Order to Comply issued against the off-site advertising sign on the North Wall of the Property, including, but not limited to, extending to the North Wall the protection of the 2003 Permanent Injunction issued against the City of Los Angeles by the Federal District Court in case number CV 00-9913.

3. **RECOUPMENT OF ADVANCE PAYMENT:** In addition to recoupment of all other sums to be reimbursed to Becker prior to making any payments to VMG, Becker shall be entitled to recoup the Advance Payment from the first $20,000 dollars received from advertising revenue generated from the walls that are the subject of the Second Agreement

4. **VMG OBTAINS NO INTEREST IN NORTH WALL:** Nothing in this OTC Agreement creates any rights in VMG to the North Wall or the revenue generated by it.

5. **REAFFIRMATION OF TERMS:** Except as expressly modified herein, all of the terms, covenants and provisions of the Management Agreements are hereby confirmed and ratified and shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this June 13, 2019 Amendment as of the date and year first written above.

VMG:

By________________

J. Keith Stephens, President

BECKER BOARDS CALIFORNIA:

By________________

Joseph White, authorized Member

**FOURTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fourth Amendment to Second Billboard Management Agreement (this "**Fourth Amendment**") is entered into as of September 23, 2019, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**"), and BECKER BOARDS, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019 (the "**First Amendment**"), as further amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, and as further amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019 (as amended, the "**Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Agreement.

B. The First Amendment was inadvertently signed by Becker Boards Small, L.L.C., an Arizona limited liability company.

C. Owner and Becker desire to confirm that the Agreement, as amended, are the obligations of Becker.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Third Amendment as if fully restated herein.

2. Parties. Owner and Becker hereby confirm that they are the parties to the Agreement. Although Becker did not sign the First Amendment, Becker hereby affirms and ratifies the First Amendment as if Becker had been a signer to such First Amendment. Owner and Becker hereby confirm that BB Small has never been a party to the Agreement and BB Small has no liabilities and obligations under the Agreement.

3. New Billboard. Owner and Becker are entering into that certain Outdoor Advertising Purchase Agreement ("**Purchase Agreement**"), whereby Becker will acquire, in accordance with the terms of the Purchase Agreement, Owner's interest in that certain Outdoor Advertising Lease Agreement, dated November 16, 2018, with Rabadi Service Station, Inc., as landlord, as supplemented by that certain Addendum, dated September 4, 2019 (collectively, the "**6301 Lease**"), for an outdoor advertising display on property located at 6301 Santa Monica

Boulevard, Los Angeles, CA (the "**6301 Site**"). Upon the assignment of the 6301 Lease from Owner to Becker (the "**Assignment Date**"), the 6301 Site shall be deemed one of the Locations and the 6301 Lease shall be deemed one of the Leases. The Adjusted Gross Income received by Becker for the 6301 Site shall be handled and distributed in accordance with the provisions of Section 5 of the Agreement. Becker and Owner confirm that the Adjusted Gross Income, after Deductions, shall be split 45% to Owner and 55% to Becker (the "**6301 Distributions**"). In accordance with the terms of the Purchase Agreement, Becker has paid to Owner the sum of Sixty Thousand and No/100 Dollars ($60,000.00) as an earnest money deposit (the "**6301 Deposit**"). In the event the Purchase Agreement is terminated, and Becker does not become the tenant under the 6301 Lease, then the 6301 Deposit shall be repaid by Owner to Becker. Becker shall first apply the 6301 Deposit to any amounts owed to Owner by Becker as part of the 6301 Distributions until the 6301 Deposit has been fully repaid to Becker.

4. Exhibit. Effective as of the Assignment Date, a new No. 13 is hereby added to Exhibit A to the Agreement and it shall read as follows:

"13. 6301 Santa Monica Boulevard, Los Angeles, CA"

5. Counterparts. This Fourth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fourth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

6. Miscellaneous. In the event that any of the terms or conditions of the Agreement conflict with this Fourth Amendment, the terms and conditions of this Fourth Amendment shall control.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fourth Amendment as of the day and year first above written.

**"OWNER"**

Virtual Media Group, Inc.,
a California corporation

By: ______________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C., an Arizona limited liability company
Its: Manager

By: ______________________
Name: Mark Becker
Its: Manager

**FIFTH AMENDMENT**
**TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Fifth Amendment to Second Billboard Management Agreement (this "**Fifth Amendment**") is entered into as of March 4, 2020, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("**Owner**" or "**VMG**"), and Becker Boards, L.L.C., a California limited liability company ("**Becker**").

RECITALS:

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018, as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 17, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, and as further amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019 (as amended, the "**Second Agreement**"), with respect to certain billboards located in the Los Angeles, California metropolitan area. All terms not otherwise defined herein shall have the meanings assigned to them in the Second Agreement.

B. Owner and Becker desire to provide that (i) one (1) wall sign located on the east side of the building located at 10350 Santa Monica Boulevard, (ii) one (1) wall sign located on the east side of the building located at 11075 Santa Monica Boulevard, and (iii) one (1) wall sign located on the west side of the building located at 11075 Santa Monica Boulevard (collectively, the "**Additional Wallsigns**"), shall become subject to the terms of the Second Agreement as set forth herein.

C. Owner and Becker desire to also amend certain provisions of the Second Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, the Second Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner and Becker hereby agree as follows:

AGREEMENT:

1. Recitals. The recitals set forth above are hereby incorporated into the body of this Fifth Amendment as if fully restated herein.

2. Performance Deadline. Section 2.1 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

"2.1 Intentionally Deleted."

3. Term. Second 3 of the Second Agreement is hereby deleted in its entirety and replaced with the following:

JKS
MMS

"3. TERM OF AGREEMENT. The initial term of this Second Agreement shall be five (5) years (the "Term") from the date of this Second Agreement, except with regard to provisions of this Second Agreement that survive the expiration of the Term. Upon the expiration of the initial five (5) year Term, the Second Agreement shall be automatically renewed for an additional term of five (5) years unless at least ninety (90) days prior the expiration of the initial Term either party notifies the other that it desires to terminate this Second Agreement (effective upon the expiration of the initial Term). Notwithstanding anything to the contrary herein, if Becker assists Owner in extending the term of any of the Leases or Additional License Agreements, the then current term shall end on the later of: (i) the then current term of this Second Agreement, or (ii) the latest expiration date of any Leases or Additional License Agreements that Becker assists Owner in extending. If Owner desires to sell some or all of the Wallsigns or Additional Wallsigns during the term of this Second Agreement or within two (2) years after the end of the term provided Becker is not in default or breach of this Second Agreement beyond any applicable notice and cure periods, Becker shall have a right of first refusal to purchase the same. If Becker desires to exercise its right, Becker must exercise it within thirty (30) days after Owner provides Becker with a copy of the third party purchase agreement and all other related transaction documents for such Wallsigns or Additional Wallsigns."

4. Wallsigns. The Additional Wallsigns are hereby added to Exhibit A to the Second Agreement.

5. Second Advance Payment. Concurrent with the execution of this Fifth Amendment, Becker shall pay to Owner the sum of Fifty Thousand and No/100 Dollars ($50,000.00) (the "**Second Advance Payment**"). Becker shall be entitled to recoup the Second Advance Payment from the Adjusted Gross Income earned on the Additional Wallsigns in twelve equal monthly installments of Four Thousand Sixty-Six and 67/100 Dollars ($4,166.67). Becker shall pay Owner an amount equal to forty percent (45%) (the other 55% to be paid to Becker for its advertising sales services) of the combined net positive amount of the Adjusted Gross Income received by Becker on the Additional Wallsigns on the immediately preceding calendar month from the Additional Wallsigns.

6. No Assignment of Additional License Agreements. Owner shall remain the licensee under (a) that certain Outdoor Advertising License Agreement, dated April 28, 2016, with LHS Equities LLC, as licensor, for the outdoor advertising display located at 10350 Santa Monica Boulevard, Los Angeles, CA, and (b) that certain Outdoor Advertising Billboard License Agreement, dated September 27, 2016, with Westwood Capital Ventures, LLC, as licensor, for the outdoor advertising displays located at 11075 Santa Monica Boulevard, Los Angeles, CA (collectively, the "**Additional License Agreements**"). Owner shall be responsible for all financial obligations under the Additional License Agreements, including, but not limited to, any license fees or revenue sharing required thereunder. Owner hereby represents and warrants to Becker that the Additional License Agreements are valid and subsisting and in full force and effect in accordance with its terms and constitutes the legal, valid, binding, and enforceable obligation of the Owner and licensor thereunder; neither Owner nor the licensor is in default; and no licensor has given any notice to Owner of intention of instituting litigation with respect to its Additional License Agreement or terminating the license thereunder.



AKS

MMB

7. Right of First Refusal.

A. As set forth in the Second Agreement, Owner was one of the named plaintiffs in Federal District Court Case Number CV 00-9913, in which the court issued the Injunction against the City of Los Angeles protecting the operation of a series of wall signs. The City's Municipal Code allows for the "relocation" of signs to new sites where both the sign owner and City come to a mutual agreement. However, nothing in this Fifth Amendment in any way obligates Owner to enter into any relocation agreement with the City nor restricts the terms of any such agreement which shall remain solely under the control of Owner. Furthermore, nothing in this Fifth Amendment requires Owner to sell any new, relocated sign.

B. If Owner decides, it its sole and unfettered discretion, to sell any new, relocated sign(s), it will give Becker notice. Becker will then have ten (10) business days from receipt of such notice (sent by overnight delivery such as Fed Ex) to negotiate with Owner a purchase price reflecting fair market value to be mutually agree by the parties. If the parties cannot agree on a fair market value or if Becker does not respond by the close of business on the tenth (10th) business day after receiving notice, it will constitute a rejection, and the right of first refusal shall expire (the "Expiration Date"). If Owner does not sell such billboard to an unrelated third party within sixty (60) after the Expiration Date, Becker's right of first refusal shall automatically be renewed with respect to such sign.

C. This right of first refusal shall be in effect be in effect for the entirety of the term of the Second Agreement.

8. Counterparts. This Fifth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Fifth Amendment, signatures transmitted by electronic PDF shall be binding to the same extent as original signatures.

9. Miscellaneous. In the event that any of the terms or conditions of the Second Agreement conflict with this Fifth Amendment, the terms and conditions of this Fifth Amendment shall control.

*[Signature Page Follows]*



AKS AMB

IN WITNESS WHEREOF, Owner and Becker have duly executed this Fifth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By: [signature]
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By: [signature]
Name: Mark Becker
Its: Manager

**SIXTH AMENDMENT TO**
**SECOND BILLBOARD MANAGEMENT AGREEMENT**

This Sixth Amendment to Second Billboard Management Agreement (this "Sixth Amendment") is entered into as of March 25, 2024, by and between VIRTUAL MEDIA GROUP, INC., a California limited liability company ("Owner"), and BECKER BOARDS, L.L.C., a California limited liability company ("Becker").

**RECITALS**

A. Owner and Becker entered into that certain Second Billboard Management Agreement dated September 13, 2018 (the "Original Agreement"), as amended by that certain First Amendment to Second Billboard Management Agreement and Third Amendment to Billboard Management Agreement dated January 30, 2019, as amended by that certain Second Amendment to Second Billboard Management Agreement dated May 7, 2019, as amended by that certain Third Amendment to Billboard Management Agreement dated June 13, 2019, as amended by that certain Fourth Amendment to Second Billboard Management Agreement dated September 23, 2019, and as further amended by that certain Fifth Amendment to Second Billboard Management Agreement dated March 4, 2020 (the "Fifth Amendment") (collectively, the "Management Agreement") with respect to certain billboards and wallsigns located in the Los Angeles, California metropolitan area.

B. Owner and Becker desire to amend the Management Agreement and remove two of the listed signs from the terms and provisions of the Management Agreement.

NOW, THEREFORE, in consideration of the Recitals, the Management Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Owner and Becker agree as follows:

**AGREEMENT**

1. Recitals. The recitals set forth above are incorporated into the body of this Sixth Amendment.

2. Exhibit A. The following wallsigns (collectively, the "Wallsigns") are deleted from Exhibit "A" and are no longer subject to the terms and conditions of the Management Agreement: (i) the wallsign identified as 1106 North Vine Street (West and South facing walls only) on Exhibit "A" to the Original Management Agreement, and (ii) the east and west facing wallsigns located on the east side of the building located at 11075 Santa Monica Boulevard (added in the Fifth Amendment). Attached to this Sixth Amendment is a revised Exhibit "A", reflecting the removal of the Wallsigns from the Management Agreement.

3. Notice. Owner's notice address in Section 7 of the Management Agreement is deleted and replaced with the following:

VIRTUAL MEDIA GROUP, INC.
1714 N. McCadden Pl, #3408
Los Angeles, California 90028
(323) 428-6500

4. Counterparts. This Sixth Amendment may be executed in counterparts, all of which shall be construed together as a single instrument. For purposes of this Sixth Amendment, signatures transmitted by electronic PDF will be binding to the same extent as original signatures.

5. Miscellaneous. Except as specifically modified in this Sixth Amendment, the Management Agreement will continue in full force and effect in accordance with its terms. In the event that any of the terms or conditions of the Management Agreement conflict with this Sixth Amendment, the terms and conditions of this Sixth Amendment will control.

6. No Default. As of the date of this Sixth Amendment, the parties mutually represent and warrant no breach or default exists under the Management Agreement and no state of facts which, with notice, the passage of time, or both, would result in a breach or default of the Management Agreement.

7. Binding. The covenants, agreements, terms and conditions contained in this Sixth Amendment bind and inure to the benefit of the parties of this Sixth Amendment and their respective successors and assigns.

8. Modifications. This Sixth Amendment may not be changed orally but only by an agreement in writing signed by the party against which enforcement of any waiver, change, modification or discharge is sought.

IN WITNESS WHEREOF, Owner and Becker have duly executed this Sixth Amendment as of the day and year first above written.

**"OWNER"**

VIRTUAL MEDIA GROUP, INC.,
a California corporation

By:_________________________________
Name: J. Keith Stephens
Its: President

**"BECKER"**

BECKER BOARDS, L.L.C.,
a California limited liability company

By: Garren Development, L.L.C.,
an Arizona limited liability company
Its: Manager

By:_____________________________
Name: Mark Becker
Its: Manager

Exhibit "A"

1. 5300 Santa Monica Boulevard, Los Angeles, CA;
2. 610 El Segundo Boulevard, Los Angeles, CA;
3. Existing back to back traditional bulletin billboard at Paloma Street, Los Angeles, CA;
4. 9911 W. Pico Boulevard, Los Angeles, CA;
5. 1800 Argyle Avenue, Los Angeles; CA;
6. 1860 Vine Street, Los Angeles, CA (East face wall only);
7. 6017 W. Sunset Boulevard, Los Angeles, CA;
8. 10350 Santa Monica, Los Angeles, CA (East Wall);
9. 25060 Ventura Boulevard, Los Angeles, CA (design review sign off to be done by VMG);
10. 1700 Wall, Los Angeles, CA;
11. 5425 Santa Monica Boulevard, Los Angeles, CA (East Wall); and
12. 6301 Santa Monica Boulevard, Los Angeles, CA.